OPINION OF THE COURT
Michael R. Juviler, J.
This is a written version of an opinion delivered from the Bench on April 14,1982, explaining an order dismissing an information. The information charged the defendant, a computer programmer employed by the Board of Education of the City of New York, with the class A misdemeanor of theft of services (Penal Law, § 165.15, subd 8), allegedly committed by using his employer’s computer for his own personal benefit without permission.
The defendant has moved to dismiss the information on various grounds, including failure to state a crime, failure to allege facts supporting each element of the crime, and denial of a speedy trial. The motion to dismiss is granted on each of the first two grounds.
The information consists of a complaint sworn to by a detective, and a supporting deposition of another public official. The information alleges:
“that on 10/80 thru [s¿c] 6/24/81 * * * the defendant committed the (offense) of: P.L. §165.15. Theft of Services under the following circumstances:
*1018 “Deponent states that he is informed by Rolf Moulton — Director of Computer Security in the Department of Education — that during the above period of time, the defendant, having control over computer equipment belonging to the Board of Education, with intent to derive a commerical [sic] benefit to himself, diverted the use of said computer equipment to himself in that the defendant used the computer to record and retrieve data for his own personal benefit, none of which data relates to the Board of Education.
“Deponent is further informed by David Wolovick — Director of Bureau of Supplies — that the defendant knew he was not entitled to such personal use of Board of Education equipment.”
Although the information does not allege the applicable subdivision of section 165.15 of the Penal Law, the parties agree that the prosecution rests on subdivision 8, which provides that a person is guilty of theft of services when: “Obtaining or having control over labor in the employ of another person, or of business, commercial or industrial equipment or facilities of another person, knowing that he is not entitled to the use thereof, and with intent to derive a commercial or other substantial benefit for himself or a third person, he uses or diverts to the use of himself or a third person such labor, equipment or facilities.” (Emphasis supplied.)
In order to survive a motion to dismiss for failure to state a crime, an information must allege facts establishing conduct that the penal statute makes criminal. (People v Case, 42 NY2d 98, 99 [information alleging that defendant broadcast to motorists the warning “there is a Smokey takin’ pictures up the road” does not allege crime of obstructing governmental administration].) The present information undoubtedly alleges some of the elements of the crime of theft of services: It alleges “control” of “equipment”, “use” of it, and knowledge that the use was unauthorized. It also alleges ownership of the equipment by “another person”; “person” is defined in the general provisions of the Penal Law to include “a governmental instrumentality” (Penal Law, § 10.00, subd 7), a term which *1019 covers the Board of Education of the City of New York. (See Education Law, §§ 2554, 2590-g.)
The central issue, however, is whether the computer was “business, industrial or commercial” equipment, within the contemplation of the statute.
The People appropriately conceded during oral argument of this motion that the board’s computer was not “commercial or industrial” equipment, for it was not used for profit in trade or commerce, or in manufacturing, but was used internally by a governmental agency as an administrative tool. (See Whitmier & Ferris Co. v Town of Tonawanda, 64 Misc 2d 787; Dwyer v Town of Oyster Bay, 28 Misc 2d 952.) The People contend that the computer was “business” equipment, on the theory that the word “business” is not limited to profit-making enterprises or professions, but as the dictionaries indicate also may mean anything that is related to the “role or function” of the equipment’s owner, in this case the board of education. The defendant contends, on the other hand, that “business” means related to trade, commerce, or pecuniary gain. He argues that because the board of education is a public agency, not a private business, and its computer was not rented to outsiders for a fee, the computer was not “business” equipment.
“As a matter of textual analysis either construction is verbally plausible.” (Cf. Matter of Morgenthau v Cooke, 85 AD2d 463, 478 [dissenting opn], mod 56 NY2d 24.) As one Judge noted, “The expression ‘business’ may be an uncertain one.” (See Matter of Frey, 154 Misc 421, 423.) “Business” can have the broad meaning urged by the District Attorney, as in “the business of learning” or “mind your business,” or the narrow one asserted by the defendant, as in “businessman,” “business cycle,” or “Business Week.”
No court has construed subdivision 8 of section 165.15 of the Penal Law. Article 165 of the Penal Law contains no definitions. But the available evidence, including the statutory language and context, and the legislative purpose reflected in the legislative history, indicates that subdivision 8 of section 165.15 of the Penal Law was intended to apply only to unauthorized use of equipment that is offered *1020 for use as a service in a commercial setting, such as for lease or hire, and was not designed to make it a crime for a public or private employee to use his employer’s internal office equipment without permission.
The meaning of the word “business” in statutes varies with the purpose of the particular statute. (Matter of Burrell v Lynch, 274 App Div 347.) For example, in some laws the term “business” clearly is intended to have its commercial meaning. (Cf. SCPA 2108 [“A fiduciary may petition for the continuation of a business other than a profession”]; Executive Law, § 63, subd 12 [“Whenever any person shall engage in repeated fraudulent or illegal acts * * * in the carrying on, conducting or transaction of business, the attorney general may apply * * * for an order enjoining * * * such business activity”].) The statute creating the duties of complainant board of education uses the word “business” in this narrow sense. (See Education Law, § 2590-g, subd 13, par a, cl [1] [Board shall require its employees to disclose any “relationship to any individual, firm, company, corporation, business, organization or association doing business with” the school district].)
In other laws, the context indicates that a broad, noncommercial meaning of “business” is intended. (Cf. General Construction Law, § 25-a, subd 1 [“When any period of time * * * within which * * * an act is * * * required to be done, ends on a Saturday, Sunday or a public holiday, such act may be done on the next succeeding business day”]; People ex rel. Barna v Malcolm, 85 AD2d 313 [latter statute applies to the “business” of the courts]; CPLR 4518, subd [a] [“Any writing * * * made as a * * * record of any * * * event, shall be admissible in evidence in proof of that * * * event * * * if * * * it was made in the regular course of any business and * * * it was the regular course of such business to make it”]; People v Mack, 86 Misc 2d 364 [latter provision applies to records of a county laboratory]; People v Giesa, 71 Misc 2d 506 [provision applies to police record]; Matter of Kelly V., 94 Misc 2d 172 [provision applies to student attendance record of board of education]; Education Law, § 2554, subd 2 [a board of education in a city shall have power to appoint “experts in educational, social or recreational work or in the business management *1021 or direction of its affairs * * * necessary for the efficient management of the schools and other educational, social, recreational and business activities”].)
In the present statute the context is commercial. Words in a statute are to be construed in connection with associated words in the same list. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 239, subd a.) In subdivision 8 of section 165.15 of the Penal Law, “business” is used as the first of three similar adjectives (“business, commercial or industrial equipment”), the other two applying to commerce. The crime occurs only when the thief has an intent to derive “a commercial or other substantial benefit”. The crime is called “Theft of services” (emphasis added), indicating a legislative purpose of protecting the offering of services to the public, not guarding equipment used internally by an agency or firm; section 165.15 of the Penal Law has been construed generally as being aimed only at the supplying of a service, an activity absent here. (See People v Neiss, 73 AD2d 938.) Moreover, if the adjective “business” were to include everything connected with the role of the board of education, as the People contend, the term would be superfluous. “[B]usiness, commercial or industrial equipment or facilities of another person” would have the same scope as “equipment or facilities of another person”.
Legislative history confirms that subdivision 8 of section 165.15 of the Penal Law was enacted to protect commercially supplied equipment from tampering or unauthorized use. In People v Ashworth (220 App Div 498), decided before section 165.15 of the Penal Law was enacted, the court held that the crime of larceny was not committed by employees of a mill who used the complainant company’s machines and workmen without permission to spin wool for sale. The court found that this corrupt use of the mill’s labor and equipment was not “property,” and therefore could not be the subject of larceny. Subdivision 8 of section 165.15 of the Penal Law (originally enacted as subdivision 7) was included in the revised Penal Law in 1967 “for the purpose of plugging (this) apparent gap” in the existing law “pointed up” by the decision in Ashworth. (Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, *1022 Book 39, Penal Law, § 165.15, p 228; Temporary State Commission on Revision of the Penal Law and Criminal Code, Proposed New York Penal Law, § 170.20, Commission Staff Notes, p 357.)*
In plugging this gap, however, the drafting commission rejected broad criminal coverage of the kind urged by the People here. The draftsmen expressly declined “to go to the other extreme of equating services with property and of predicating, whenever possible (mainly in the area of deception), ‘theft of service’ offenses to those involving thefts of property, or larcenies. Legislation of that character would doubtless lead to hosts of ‘criminal’ charges of a basically civil nature” (emphasis supplied). (Proposed New York Penal Law, § 170.20, Commission Staff Notes, p 356.)
Moreover, subdivision 8 of section 165.15 of the Penal Law is derived from a prototype law which was specifically intended to apply only to services offered commercially. Subdivision 8 of section 165.15 of the Penal Law is closely patterned after subdivision (2) of section 206.7 of the Model Penal Code, a section titled “Theft of Labor or Service”. (Cf. Proposed New York Penal Law, Commission Foreword, pp v-vi.) The latter provides: “(2) A person commits theft if, having control over the disposition of labor or service of others, to which he is not entitled, he diverts their labor or service to his own benefit or to the benefit of another not entitled thereto.” (Model Penal Code, Tent Draft No. 2, § 206.7, subd [2].) This provision, like subdivision 8 in our law, was designed to remedy the “inadequacy” of existing law to reach industrial fraud of the kind illustrated by People v Ashworth. (See Model Penal Code, Tent Draft No. 2, § 206.7, Comment.) It does not apply to the facts alleged in the present information, for “The subsection limits liability to misappropriation of services available for hire” (Model Penal Code, Tent Draft No. 2, § 206.7, Comment, p91).__
*1023 Further indication that this was the intended meaning of subdivision 8 of section 165.15 of the Penal Law is the simultaneous enactment in 1967 in the same chapter of a provision in which the term “business” was defined to include noncommercial governmental activity. Article 175 of the Penal Law, dealing with false written instruments, includes crimes relating to falsifying “business” records. These records are defined to include all records of a governmental entity reflecting its activity. (Penal Law, § 175.00; see People v Davis, 49 NY2d 910.) The absence of a similar definition applicable to section 165.15 of the Penal Law indicates that this broad meaning was not intended there; when the word “business” is intended to have a noncommercial meaning in a portion of the Penal Law, the statute says so clearly.
If “business * * * equipment or facilities” in subdivision 8 of section 165.15 of the Penal Law had the broad meaning claimed by the People and included any equipment or facilities serving the function of the owner, the enactment of the revised Penal Law in 1967 would have made criminals of the thousands of employees in government and the private sector who make unauthorized use of their employers’ computers, word processors, calculators, copying machines, telephones, typewriters, and other equipment or facilities for personal benefit. The Legislature could not have intended such a dramatic change in the criminal law of this State, transforming “basically civil” wrongs to misdemeanors punishable by a year in jail, without giving clearer indication of its novel purpose.
“Although a court must not be overly technical in interpreting penal provisions, penal responsibility cannot be extended beyond the fair scope of the statutory mandate * * * If there is to be a diametric change in the statute, it should come from the Legislature.” (People v Case, 42 NY2d 98, 101, supra.)
In 1982 the Legislature of the State of New York could reasonably find a need to regulate, even by penal sanction, conduct of the type alleged in this information. Perhaps computers are a special type of expensive, commonly owned equipment so subject to misuse that the Legislature might wish to give their owners special protection.
*1024 Extensive literature in the field of computers describes the widespread unauthorized use of this type of equipment. (See Selected Materials on Computer Crime, 37 Record of Association of the Bar of City of New York, p 285 [April, 1982].) Other Legislatures have recently addressed this problem. Illinois created the offense of “[u]nlawful use of a computer” which includes any use of a computer without consent, whether or not the computer service is for hire. (lll Crim Code, § 16-9.) This court, however, may not create an offense. Unless subdivision 8 of section 165.15 of the Penal Law is amended, it will apply only to unauthorized tapping into a computer whose service is for hire.
Even if the People’s interpretation of subdivision 8 of section 165.15 of the Penal Law were correct, a separate ground for dismissal of the information would be its failure to allege every element of the crime, and failure to allege facts supporting every element of the crime. “[E]very element of the crime” must be “properly recited in the factual part of the information and the accompanying deposition”. (People v Case, supra, p 100.) In addition (p 100), “every element of the offense charged * * * must be supported by nonhearsay allegations” of fact. (CPL 100.15, 100.40, 170.35.)
The information before the court is the third filed by the People in this action, the first two having been insufficient. The first information was replaced because it failed to allege the element of intent (see People v Hall, 48 NY2d 927), the second because it was amended without verification. The present information is defective because, like the first two, it does not allege the element of “business, commercial or industrial equipment”; the information is silent as to which if any of those three categories the complainant’s computer was in. Another defect is failure to allege any facts supporting the allegation relating to the element of an intent to derive a “commercial benefit”; no facts are alleged in the information regarding the use to which defendant put the computer. (The defendant’s motion to dismiss contains allegations about this, but these are not part of the accusatory instrument.) These defects could be corrected by amending the information, if my *1025 ruling as to the first ground for dismissal (failure to state a crime) is incorrect. (See CPL 100.45, subd 2; 200.70.)
The third ground asserted by the defendant for dismissal of the information is denial of a speedy trial. More than the prescribed 90 days have passed since the commencement of this action against the defendant by the filing of an accusatory instrument, and the People have not answered ready for trial. (See CPL 30.30.) The People contend that most of the period of delay is not chargeable to them, but is excludable by law. Because the papers submitted by the parties create material issues of fact which cannot be resolved on the basis of conclusive documentary proof, an evidentiary hearing is necessary for determination of the speedy trial motion. (People v Russo, 78 AD2d 557; People v Tolentino, 71 AD2d 934.) In view of my dismissal of the information on other grounds, it would be an imprudent use of the resources of the court and the parties to conduct that hearing now.

 Some provisions of subdivision 8 of section 165.15 of the Penal Law, not involved here, protect against misuse of another person’s employees or “labor”, an aspect of the fraud in People v Ashworth (220 App Div 498). (See Matter of Dati v Gallagher, 68 Misc 2d 692 [school custodian used other employees to paint his own house during working hours; subdivision 8 of section 165.15 of the Penal Law was violated.)