**Theodore WEG, Plaintiff,**

v.

**Frank J. MACCHIAROLA, et al., Defendants.**

**No. 84 Civ. 4430 (PKL).**

United States District Court, S.D. New York.

Jan. 24, 1990.

329

Deborah G. Rothman, New York City, for plaintiff.

Peter L. Zimroth, Corp. Counsel, New York City (Ruby Bradley, Marcia Goffin, Robin Levine, Ira Lipton and Lina Liberatore, of counsel), for defendants.

## OPINION & ORDER

LEISURE, District Judge.

Plaintiff Theodore Weg ("Weg") had brought this action, pursuant to 42 U.S.C. §§ 1983 and 1985, alleging that defendants[1] have deprived him of his civil rights. Specifically, Weg alleges that defendants, under color of state law, individually and through a conspiracy, falsely ar-

---

**1.** The defendants are: Frank Macchiarola, individually and as Chancellor of the Board of Education of the City of New York; Stanley N. Lupkin, individually and as Commissioner of the Department of Investigation; E. Gordon Haesloop, individually and as Deputy Commissioner of the Department of Investigation of the City of New York; Rolf Moulton, individually and as Director of the Computer Security Services Unit of the Department of Investigation; Richard Halverson, individually and as Deputy Chancellor of the Board of Education; David Wolovick, individually and as Director of the Bureau of Supplies of the Board of Education; Dan A. Landes, individually and as Assistant District Attorney of Kings County; Frank Nevins, individually and as a Police Officer of the New York Police Department; Joyce Coppin, individually and as Deputy Director of the Division of Personnel of the Board of Education; Lynne Coffin, individually and as an attorney for the Office of Legal Services of the Board of Education; Joseph G. Barkan, Miquel O. Martinez, Amelia Ashe, Robert Christen, Irene Impellizeri, Marjory Lewis, and James F. Regan, as members of the Board of Education; and John Doe and Richard Roe.

rested him, maliciously prosecuted him, denied him advancement opportunities, denied his due process rights in disciplinary proceedings against him, and intentionally maligned his reputation by publishing false charges against him. Defendants now come before the Court on their motion for summary judgment on all outstanding issues. Plaintiff has cross-moved for partial summary judgment on liability and to amend his complaint to include the Board of Education of the City of New York ("the Board") and the City of New York ("the City") as defendants.

## BACKGROUND

Weg was hired by the Board as a computer systems manager in July 1972. In 1981 he continued to hold that position, working for the Board's Bureau of Supplies in Long Island City, Queens. He was apparently a highly regarded employee. In April 1981, an employee of the Board's Auditor General's staff conducted an apparently routine audit of the content of the computer files of various Board employees, including Weg. During this audit, material was found in Weg's computer files (his "files") that the auditor believed was unconnected with his position with the Board. That material was passed on to the Auditor General and to the Deputy Inspector General of the Board.

The material in question appeared to concern horses and the purchase and sale of computer equipment. The Deputy Inspector General took the material concerning horses to the staff of New York State Off Track Betting Corporation ("OTB"). The OTB Inspector General told the Board employees that the material on Weg's computer concerned harness racing. Learning this, the Deputy Inspector General contacted the New York City Department of Investigation ("DOI") which began an investigation. Further information was gathered from Weg's computer file. Rolf Moulton ("Moulton"), Director of Computer Security Services for DOI, went back to OTB for

more information on the material stored in Weg's files. Moulton was told that the material included genealogical data on horses useful to someone involved in horse breeding, and horse betting data.

Further, Moulton's investigation revealed that other material in Weg's files indicated that he had been purchasing computer equipment with the apparent intent of reselling that equipment at a profit. Specifically, Moulton and others in the investigation found that Weg had written purchase orders on his Board computer for the purchase of computer equipment, and that Weg had a New York sales tax exemption number which is used primarily by persons engaged in the wholesale business.

Based on all this information, Gordon Haesloop ("Haesloop"), deputy commissioner of DOI, and another attorney assigned to the case, decided that probable cause existed to arrest Weg for theft of services as defined in New York Penal Law § 165.15(9).[2] Under New York law, a person can be found guilty of theft of services when

> Obtaining or having control over labor in the employ of another person, or of business, commercial or industrial equipment or facilities of another person, knowing that he is not entitled to use thereof, and with intent to derive a commercial or other substantial benefit for himself or a third person, he uses or diverts to the use of himself or a third person such labor, equipment or facilities.

N.Y.Penal L. § 165.15(9) (McKinney 1988). Those involved in the investigation assert that they believed that Weg had knowingly used the Board's computers for personal use to derive a commercial or substantial benefit. This conclusion was based on their findings that Weg, apparently a licensed owner and groom of race horses, had information in his Board computer files that appeared to be related to the business of owning and racing horses. Additionally, the investigators relied on their finding that Weg had seemingly used the Board's

---

**2.** At the time the charges were filed, the code section involved was N.Y.Penal L. § 165.15(8). The code section has since been amended to add a new subsection 8, recodifying the charge at issue to subsection 9.

computers to prepare purchase orders for computer equipment evidently intended for resale at a profit. Based on this information, Haesloop authorized New York Police Detective Nevins, then assigned to DOI, to arrest Weg for theft of services. The arrest was effectuated on June 24, 1981.

While the investigation which led to Weg's arrest was underway, the Board was also considering bringing internal disciplinary charges against Weg. Charges were brought by the Board at the same time as the arrest, charging Weg with conduct unbecoming to his position or conduct prejudicial to the good order, efficiency or discipline of the service, and suspending him for 30 days without pay.[3] The criminal and disciplinary charges against Weg were publicly announced in a press release, which coincided with the announcement by Mayor Edward I. Koch of a new City policy tightening rules on personal use of City-owned computers.

Thereafter, DOI and the Board continued their investigations of Weg. Meanwhile, Weg's employment status remained uncertain. His pay was restored after the thirty day suspension, but he was without a work position at the Board. In October 1981, four months after charges had been brought against him, Weg was offered a non-computer-related position with the Board's Division of Personnel. Weg refused the position and insisted that he be reinstated at his old job. Despite this refusal to report to his new assignment, Weg continued to receive his salary, even though he was not performing any services for the Board. The Board attempted to reach a settlement with Weg of the disciplinary charges against him, which would involve his resignation from the Board, but those discussions were unsuccessful.

Meanwhile, the criminal proceedings continued forward, as follows. In June 1981, at the time of Weg's arrest, a prosecutor's information was filed, charging Weg with theft of services. In December 1981, a superseding information was filed based on additional material discovered during the intervening months. Weg brought a formal motion to dismiss the information, and, in April 1982, Judge Michael Juviler of the Criminal Court of the City of New York, Kings County, dismissed the case. Judge Juviler ruled that the Board's computers were not "business, industrial or commercial" equipment as understood in the statute. 113 Misc.2d 1017, 450 N.Y.S.2d 957. Judge Juviler's decision was upheld by the Appellate Term of the Supreme Court in March 1983.

After the criminal charges were dismissed in April 1982, the Board again ordered Weg to return to work, this time in the Office of Personnel Security. Again, Weg refused to report to this position. Based on his refusal to assume his assigned position, the Board suspended his salary payments pending his reporting to his job. Weg then commenced a mandamus proceeding under Article 78 of the New York Practice Law and Rules, demanding reinstatement to his position as a computer systems manager. The Article 78 proceeding was settled in late 1982, and Weg received all his back pay. However, he was not restored to his position as a computer systems manager. He continued to receive pay from the Board for three years without performing any services for the Board. Finally, in 1985, the new Schools Chancellor, Nathan Quinones, advised Weg that all disciplinary proceedings against him were being dropped and that he could return to work in the Office of Data Processing as a computer systems manager. In May 1986, Weg received the one month's salary that had been withheld from him during his suspension in 1981.

After the settlement of his Article 78 proceeding, but before his reinstatement, Weg filed this action alleging that the Board's and DOI's actions amounted to vio-

---

**3.** At the same time, disciplinary charges were also brought against Stephen Zabriskie ("Zabriskie"), another Board employee on whose computer an audit had apparently found unauthorized material. No criminal charges were brought against Zabriskie as the investigators did not find any of the information in his files to be of a commercial nature. The charges against Zabriskie were dropped when Zabriskie agreed to resign from the Board and not seek employment there at any future time.

lations of his constitutional rights. Since that time, this case has proceeded at a methodical and deliberate pace. On March 2, 1987, this Court granted summary judgment for defendant Dan Landes, the prosecutor of the criminal charges against Weg, on the grounds that Landes was protected from the charges by prosecutorial immunity. 654 F.Supp. 1189. The case was then referred to United States Magistrate Naomi Reice Buchwald of this Court by order dated September 28, 1987, for supervision of discovery. Almost a year later, on August 1, 1988, Magistrate Buchwald informed the Court that discovery was complete. Defendants indicated they wished to bring a motion for summary judgment on all charges. It then took almost a year for this motion and plaintiff's cross-motions to be fully submitted before the Court, the final reply papers not being received until July 31, 1989.

## DISCUSSION

Defendants state six grounds for their motion for summary judgment. First, they assert that probable cause existed for Weg's arrest and subsequent prosecution. Second, defendants assert that even if probable cause did not exist, they are shielded from liability by qualified immunity. Third, defendants claim that Weg suffered no legally cognizable deprivation of rights as a result of defendants' actions. Fourth, defendants assert that even if the Court finds a deprivation of rights, they are immune from suit based on the doctrine of absolute or qualified immunity. Fifth, they claim that Weg cannot establish a policy or practice of either the Board or DOI that caused any deprivation of legally cognizable rights. Sixth, defendants claim that Weg is not a member of a class protected by 42 U.S.C. § 1985. Plaintiff has cross-moved for summary judgment on the issue of defendants' liability, and also moved for permission to amend his complaint. The Court will address these motions in turn.

*A) Defendants' Motion for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." " '[A] motion for summary judgment should be granted only "when, viewing the record in the light most favorable to the non-moving party, the evidence offered demonstrates that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law." ' " *Leberman v. John Blair & Co.*, 880 F.2d 1555, 1559 (2d Cir.1989), *quoting Pension Benefit Guaranty Corp. v. LTV Corp.*, 875 F.2d 1008, 1015 (2d Cir.1989), *quoting Cinema North Corp. v. Plaza at Latham Associates*, 867 F.2d 135, 138 (2d Cir.1989).

The substantive law governing the case will identify those facts which are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.... While the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must then determine whether there does indeed exist a genuine issue as to any material fact: "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511; *see also R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102 (2d Cir.), *cert. denied sub nom. Lipton v. R.C. Bigelow, Inc.*, —— U.S. ——, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any,' which it believes demonstrates the absence of a

genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), *quoting* Fed.R.Civ.P. 56(c). *See also Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506 (2d Cir.1989). However, Rule 56 does not require that the moving party support its motion with affidavits or other similar materials which negate the opponent's claim. Rather, "the motion may, and should, be granted so long as what is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Celotex, supra,* 477 U.S. at 323, 106 S.Ct. at 2553. The burden on the moving party will be "discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. at 2554.

■ Indeed, once a motion for summary judgment is properly made, the burden then shifts to the nonmoving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson, supra,* 477 U.S. at 250, 106 S.Ct. at 2511. Because the District Court must determine "whether there is a need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only be a finder of fact because they may reasonably be resolved in favor of either party," *id.*—the nonmoving party must produce, at the summary judgment stage, "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.... If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* While the Court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought," *Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975) (citations omitted), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted).

Ultimately, "[i]n considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987), *citing Anderson, supra,* at 477 U.S. at 247–50, 106 S.Ct. at 2509–11.

### 1) Probable Cause

■ Weg alleges that defendants did not have probable cause to arrest him for theft of services and thus violated his rights under 42 U.S.C. § 1983. "It is fundamental that § 1983 creates no independent, substantive constitutional rights but rather is a vehicle for enforcing such rights." *Rosa R. v. Connelly*, 889 F.2d 435, 440 (2d Cir. 1989). *See Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617–18, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979). In order to state a claim under § 1983, a plaintiff must allege that, first, the conduct complained of was committed by a person acting under color of state law, and, second, that such conduct deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981); *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970).

■ There is no doubt that plaintiff meets these threshold standards. Defendants do not deny that all of the actions alleged in the complaint were taken under color of state law. Further, an arrest made without probable cause is a violation of a person's constitutional rights. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Defendants assert, however, that they did have probable cause for Weg's arrest in June 1981, and thus should be granted summary judgment on this issue. Plaintiff asserts that defendants should have known that Weg's ac-

tions involving his personal use of the Board's computer did not constitute theft of services as defined in the New York Penal Law.

"Probable cause to arrest exists when an officer has knowledge of facts and circumstances 'sufficient to warrant a prudent man in believing' that an offense is being or has been committed." *United States v. Edmonds*, 535 F.2d 714, 719 (2d Cir.1976), *quoting Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). Thus, a determination of whether probable cause existed for the arrest must be made looking at the facts known to defendants at the time of the arrest, not those facts learned later. Plaintiff bases his assertion that probable cause did not exist in part on Judge Juviler's finding that N.Y.Penal L. § 165.15(9) did not intend computers of the sort used by Weg to be included as "business equipment" subject to criminal use under the statute. Plaintiff's reliance on Judge Juviler's opinion in the context of Weg's arrest is misplaced. First, Judge Juviler was explicit in his conclusions that no court had previously interpreted the reach of the term "business equipment" in the context of § 165.15(9) and that defendants' interpretation of the term was not without basis in law. Moreover, it is important to note that Judge Juviler had to undertake an extensive and scholarly review of the legislative history of § 165.15(8) and other laws before he could determine the intent of the legislature in using the term "business equipment."

The Court cannot find, as plaintiff insists it must, that defendants' failure to anticipate Judge Juviler's findings constitutes a lack of probable cause. As defendants point out, such a finding would make any

arrest made under untested criminal statutes unduly subject to post-dismissal attack. Plaintiff, in order to support his argument against defendants' motion, must show that at the time the arrest was made, defendants did not have sufficient facts in their possession to have probable cause for the arrest under the applicable statute.

Viewing the facts in the light most favorable to plaintiff, the Court cannot find any facts which a reasonable finder of fact could believe shows that defendants did not have probable cause to believe that plaintiff's activities uncovered by defendants made out the crime of theft of services. Defendants had discovered the presence of unauthorized use by plaintiff of a computer owned by the Board.[4] Further, the evidence uncovered by defendants showed that the material on the computer could have been used for profit-making purposes. In particular, defendants knew that some of the information on the computer related to horse betting and horse breeding. Defendants believed that plaintiff was a part owner of some horses and that he was a licensed breeder of horses.[5]

Finally, defendants believed that plaintiff knew or should have known that his use of the Board's computer facilities for his personal business was improper and unauthorized. Plaintiff is correct that it is a question whether, in fact, plaintiff's use of the computer was unauthorized or improper. However, that issue does not go to whether the arrest was made with probable cause, but to whether Weg was guilty of the crime charged. The Court finds that plaintiff has failed to present any evidence indicating that defendants did not or could not believe that plaintiff's use of the computer

---

**4.** Plaintiff claims in his motion papers that defendants had no evidence that it was plaintiff who put the unauthorized material in plaintiff's files. Plaintiff, however, provides no evidence to show that any other person could have had access to his files and put the suspect information into the computer. In light of the extensive evidence presented by defendants linking plaintiff to those files, the Court does not find plaintiff's attempt to raise the issue of identity to be well taken.

**5.** Plaintiff asserts that he was and is not a licensed horse breeder. Defendants, however, have produced license applications and temporary permits for owner and groom licenses purportedly for Weg from the New York State Racing and Wagering Board. The Court finds that, regardless of whether these licenses were ultimately issued, the presence of these applications and temporary permits would have been sufficient to give defendants reason to believe that Weg was involved in the business of owning and raising horses.

equipment was unauthorized. Accordingly, the Court finds that probable cause did exist to arrest plaintiff.[6] As the Court has found that probable cause existed for Weg's arrest, it need not reach defendants' argument that they are immune from liability for an improper arrest under the doctrine of qualified immunity.

### 2) Malicious Prosecution

■ Plaintiff alleges that defendants maliciously continued to prosecute Weg after it became clear to defendants that the charges against Weg were unsupportable as a matter of law. A claim of malicious prosecution is cognizable under § 1983. "A claim of malicious prosecution brought pursuant to section[ ] 1983 ... is governed by state law in the absence of federal common law. Under New York law, a plaintiff alleging malicious prosecution must establish that: (1) the defendant either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted in actual malice." *Janetka v. Dabe*, 892 F.2d 187, 189 (2d Cir.1989) (citation omitted).

It is uncontested that plaintiff can meet the first two requirements for a showing of malicious prosecution. The Court's inquiry, then, must focus on whether there is a genuine issue of fact regarding the third and fourth elements of a claim for malicious prosecution. First, the Court notes that the fact that the arrest was made with probable cause does not end the inquiry into the viability of plaintiff's malicious prosecution claim. The New York courts have indicated that it is sufficient for plaintiff to show "the absence of probable cause for the criminal proceeding." *Boose v. City of Rochester*, 71 A.D.2d 59, 421 N.Y.S.2d 740, 746 (4th Dep't 1979). The criminal proceeding can be viewed as

separate from the arrest. Indeed, an arrest only begins a criminal proceeding. The criminal proceeding can involve extensive additional information obtained in preparation for trial, as well as legal research leading up to a disposition by motion or by trial before a jury. The Court must decide, then, if there is a question of fact as to whether there continued to be probable cause for the prosecution of the case after the arrest. The Court finds that there is a genuine issue of fact as to whether there was probable cause for continuing the criminal prosecution to the extent taken by defendants. Plaintiff correctly points to a memorandum written by Assistant District Attorney Malamy. This memorandum, dated August 24, 1981, two months after Weg's arrest, accomplishes a thorough analysis of the facts and law relating to the charges against plaintiff. That analysis, of which defendants were aware, indicated that Malamy did not believe that the charges could be sustained. Indeed, Malamy points out some of the same legal problems later identified by Judge Juviler in his opinion dismissing the charges against Weg. Despite this memorandum, defendants continued their prosecution against Weg, even filing two superseding informations in an effort to support the charges. While the Court does not find that the information contained in Malamy's memorandum should have been known to those defendants involved in the arrest, the Court does find that it is a question for a fact finder to determine whether this memorandum removed the cloak of probable cause from the continuation of the prosecution.

The Court must also decide if there is a question of fact regarding whether continuation of the proceedings against Weg was taken with malice. For the purposes of a malicious prosecution claim, "[m]alice means 'malice in fact' or 'actual malice',

---

6. Plaintiff attacks defendants' decision to pursue criminal charges against Weg but not against Zabriskie. Plaintiff asserts that under the statute there was no difference between the acts of plaintiff and those of Zabriskie. The Court cannot find any basis in this assertion. The material found in Zabriskie's file was of a purely

personal nature: a video tape inventory, a personal finance library, and computer games. There is no evidence that any of these items could be used for commercial or substantial benefit as required by the theft of services statute.

not malice implied by law.... [P]laintiff is not required to prove that defendant was motivated by spite or ill will, although such proof will satisfy the legal requirements. The existence of malice may be presumed by proof that probable cause was lacking or by proof of defendant's reckless or grossly negligent conduct." *Boose, supra,* 421 N.Y.S.2d at 749 (citations omitted). The Court finds that, under that standard, it is a question of fact whether the continuation of the prosecution of Weg after Malamy's memorandum constituted malice as defined for purposes of a malicious prosecution claim.[7]

██ Since the Court has found that there exists a genuine issue of fact on plaintiff's claim of malicious prosecution, the Court must determine whether qualified immunity attaches to those defendants implicated in the malicious prosecution claim.[8] "Government officials performing discretionary functions are generally protected from civil liability where the challenged conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Dobosz v. Walsh,* 892 F.2d 1135, 1140 (2d Cir.1989). *See also Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This is a not a subjective determination. "The existence of such qualified immunity turns on the objective legal reasonableness of those actions under the legal rules prevailing at the time the actions were taken." *Dobosz, supra,* 892 F.2d at 1140. In the case before the Court, there is a genuine issue of fact as to whether the continuation of the prosecution after the receipt of Malamy's memorandum was objectively reasonable.

Accordingly, the Court cannot find at this time that qualified immunity attaches for the purposes of the malicious prosecution claim.[9]

### 3) Due Process Violations

Plaintiff alleges that the disciplinary proceedings instituted against him by the Board violated his due process rights. This attack on the Board's action has two prongs. First, plaintiff alleges that defendants' action deprived him of a property right by suspending him without a hearing, and then refusing to reinstate him to his position. Second, plaintiff asserts that defendants' release of information to the press, without full adjudication of the charges against him, regarding plaintiff's arrest and suspension harmed his reputation and made it impossible for him to obtain other work in his field, thus depriving him of a liberty interest.

A court's analysis of a due process claim must proceed in two distinct stages. "The threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution. *If* a protected interest is identified, a court must then consider whether the government deprived the plaintiff of that interest without due process." *Narumanchi v. Board of Trustees of Connecticut State University,* 850 F.2d 70, 72 (2d Cir.1988) (citation omitted) (emphasis in original). "Property interests are created, and their dimensions defined, by state law. Whether a state-created interest amounts to a property right of which the holder may not be deprived without procedural due process is a question of federal constitutional law." *RR Village*

---

7. Plaintiff in his deposition asserts that defendant Richard Halverson ("Halverson") possessed actual malice against Weg because Weg had refused a position offered to him by Halverson. Plaintiff has presented no evidence to support his claim that he was offered another position or that, even if he was, Halverson had any reason to seek retribution for Weg's refusal to accept it. While Weg's testimony will certainly be available to the ultimate trier of fact and may well affect the finding on the issue of malice, the Court has not considered this uncorroborated testimony in its determination that there is a genuine issue for trial.

8. While plaintiff's complaint is not clear, it appears that defendants Halverson, Wolovick, Landes, Macchiarola, and Lupkin are charged by plaintiff with malicious prosecution.

9. Defendants assert that absolute immunity attaches to defendant Macchiarola for those claims arising from the disciplinary action taken against Weg by the Board. However, they do not appear to make such assertions for Macchiarola's role, if any, in the malicious prosecution claim.

*Association, Inc. v. Denver Sewer Corp.,* 826 F.2d 1197, 1201 (2d Cir.1987) (citations omitted).

■ Plaintiff relies on a line of cases beginning with *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) to support his claim that Weg has an interest that is protected by due process and which was violated by the Board's disciplinary proceedings. There is no doubt that these cases, particularly *Sinderman,* greatly expanded the interests protected by due process requirements. However, it appears that plaintiff wants this Court to expand that reach further than the Supreme Court or the Second Circuit have ever deemed it appropriate and necessary to consider. The cases cited by plaintiff to support his claim that his suspension from his position with pay violated a protected right all involve the dismissal, not suspension, of public employees without pay. Plaintiff has cited no case where an employee who was suspended with pay was found to have a constitutionally protected entitlement.[10]

While, as the parties have found, there does not appear to be a case directly on the instant facts, the Court is not without guidance. In *Gates v. Sicaras,* 706 F.Supp. 169 (D.Conn.1989), the district court addressed the § 1983 claims of a police officer who had been suspended from his job, originally without pay, though that order was modified, and plaintiff received his back pay. The first hearing on the charges against plaintiff were not held until almost a year after his original suspension, and eventually, all charges against him were dismissed. Plaintiff alleged that his suspension constituted a deprivation of property without due process.

The district court was faced with a motion by defendants for summary judgment. The court found that, first, plaintiff had failed to demonstrate that he had a property interest protected by the due process clause. Second, the court found that

> Even if plaintiff did have a property interest in his public employment, it is questionable whether plaintiff was ever deprived of that interest. Plaintiff was never terminated from his position, but rather he was suspended. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 544–45, 105 S.Ct. 1487, 1494–95, 84 L.Ed.2d 494 (1985).... Plaintiff eventually received his regular salary for the full period of suspension. Plaintiff also claims economic loss from missed raises, loss of private duty jobs, loss of promotional opportunities, and loss of over-time. Plaintiff fails, however, to offer any evidence pointing to a claim of entitlement to such benefits of employment beyond his regular salary. Furthermore, plaintiff was eventually reinstated and his personnel record cleared.

706 F.Supp. at 172–173 (footnote omitted).

The Court finds the district court's logic in *Gates* to be compelling. Weg, like the officer in *Gates,* has failed to present evidence to the court of any entitlement he has under State law which would prevent his suspension. He states that he is protected by his civil service position, but he fails to show how that protection entitles him to be free from suspension. Weg's case is further weakened by the fact that he was offered other, non-computer-related positions during his suspension, which he refused, and by the fact that, except for two brief periods, he received his pay on a regular basis during his suspension, and the pay that was withheld was eventually repaid to him. Finally, the Court notes

---

**10.** Plaintiff asserts that because defendants have failed to cite a case where an employee suspended with pay was found not to have a constitutionally protected right to due process that defendants' summary judgment motion must fail. This is a miscontruance of the standard for summary judgment. The burden of proof as to law and facts on any allegation rests with the plaintiff from the beginning to the end of the case. On a motion for summary judgment, the moving party bears the burden of showing that there is no genuine question of fact for a trier of fact on a claim raised by the nonmoving party. Once the moving party has made such an initial showing, the burden shifts back to the nonmoving party to defend his claim and show that there is a genuine issue for trial. Thus, plaintiff's assertion that because defendants have not presented a case on point his claim must proceed is incorrect.

that Weg did work during the period of his suspension as a computer consultant.

 Even if the Court had found that there was an question as to whether Weg had a protectable right under § 1983, the Court cannot find that there was any due process violation. While the Supreme Court has held that a pre-*termination* hearing is required when a public employee with a definable interest in his position is dismissed, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the Supreme Court has never held that a public employee, even one with tenure or its equivalent, has a right to a hearing prior to a suspension, particularly a suspension with pay. Indeed, in *Loudermill*, which involved the dismissal of an employee cloaked with demonstrated civil service protection, the Supreme Court required only a minimal pre-termination proceeding, not a full evidentiary hearing. Thus, the Court finds that Weg was not denied due process when he was suspended without a hearing.

Further, the Court finds that the Board provided the opportunity for a post-suspension hearing. Immediately after the suspension, the Board appointed a hearing officer to investigate and hold a proceeding to determine the validity of all the charges against Weg, and later appointed a second hearing officer after the first one died. It is true that a hearing was never held on the charges. However, the opportunity for a hearing did clearly exist. Further, the evidence before the Court shows that at least one meeting was held with the parties and the first hearing officer, and that substantial negotiations between the parties took place during the period of the suspension. These negotiations, which apparently came close to successfully resolving the dispute, were undertaken in lieu of an immediate hearing. Weg's counsel at the

time participated in these negotiations, and Weg has presented no evidence that at any point he demanded an immediate hearing on the charges and was refused one. Finally, the Court notes that Weg took the opportunity available to him under New York law to bring an Article 78 proceeding which would also allow his case to be heard. Weg, however, also agreed to terminate this proceeding prior to actual adjudication. There were opportunities for Weg to be heard. He has presented no evidence that defendants denied him access to those opportunities, and, indeed, there is evidence that he acquiesced in the negotiations and termination of the Article 78 action. Accordingly, the Court could not find a genuine issue of fact that Weg's due process rights had been violated, even if the Court had found a protectable right.

*4) Deprivation of Liberty Interest*

 Plaintiff alleges that defendants deprived him of a liberty interest by releasing to the press information regarding plaintiff's arrest and suspension. Weg claims that the press release and the subsequent articles damaged his reputation and made it impossible to find other work in his field.[11]

The issue of damage to reputation is governed by the teaching of *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In *Paul*, the Supreme Court stated that damage to reputation alone is not sufficient to give rise to a claim of harm to a liberty interest. The Supreme Court required that a plaintiff show damage to his "reputation-plus," damage to his reputation and to some other protectable interest such as the right to freely seek employment. The Second Circuit has found cognizable harm to a liberty interest where, for example, there has been loss of public employment, *see, e.g., Goetz v. Windsor Central School District*, 698 F.2d 606, 610 (2d Cir.

11. Plaintiff appears to assert that defendants should be held responsible not only for the release to the press of information regarding the arrest and suspension, but also for the content of the articles arising from the press release. The Court notes that some of the articles which appeared following the release of information to the press were inaccurate and misrepresented

the reality of Weg's actions and position. Plaintiff, however, provides no authority in support of the position that defendants should be held responsible for the factual inaccuracies by various reporters and editors, and the Court declines plaintiff's invitation to find such liability under the circumstances of this case.

1983), and where plaintiff has been completely prevented from practicing his profession. *Baden v. Koch*, 799 F.2d 825, 830–31 (2d Cir.1986).

Plaintiff asserts that he falls within the protected class under *Paul*. He claims that, not only was his reputation damaged, but that he was unable to practice his profession for some five years, and that he was unable to obtain other employment in the field. Plaintiff relies principally on two cases to support his claim that his liberty interests have been violated and that he is entitled to recovery. First, plaintiff cites *Velger v. Cawley*, 525 F.2d 334 (2d Cir. 1975), *rev'd on other grounds sub nom. Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977). In *Velger*, a police officer was dismissed from his position, and claimed damages because his dismissal created a stigma that foreclosed other employment opportunities. Plaintiff in *Velger* made a substantial showing that he had attempted to obtain other positions and had been denied them. Weg further relies on *Huntley v. Community School Board of Brooklyn*, 543 F.2d 979 (2d Cir.1976), *cert. denied*, 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 773 (1977). In *Huntley*, a school principal was publicly dismissed from his position, the charges against him being read aloud at a public meeting. The Court found that the stigma created by the public charges, which included claims that plaintiff's leadership had led to "confusion and discontent," combined with his dismissal, made it unlikely that he would ever again be able to obtain a supervisory position in a school.

Plaintiff's reliance on these cases is problematic. First, both cases cited by Weg involve the dismissal and subsequent refusal to rehire public employees. The injury beyond reputation was permanent: employment opportunities were closed, both by the prior employer and by future employers. In the instant case, Weg was suspended with pay, not dismissed, and he was reinstated, albeit after substantial time had passed, to his original position. More importantly, in the cases cited, the plaintiffs had made significant showings to the Court that their future employment opportunities had been almost certainly irreparably damaged. Weg has made no such showing here. Weg has been reinstated to his former position. He has presented no evidence to indicate that his arrest or disciplinary proceedings have had any impact on his current or future employment with the Board. Further, during the period of his suspension, indeed, even while he was still facing criminal charges, he was able to find work in the private sector in the computer field. Thus, the Court finds that plaintiff cannot show a "reputation-plus" injury as required by *Paul v. Davis, supra*, and fails to meet the facts of the cases he presents in his support. Accordingly, the Court finds that there is no genuine issue of fact as to plaintiff's assertion of deprivation of a liberty interest.[12]

#### 5) Claims Under § 1985

Plaintiff further alleges that defendants conspired to deprive him of his rights in violation of 42 U.S.C. § 1985(3).[13]

Any of plaintiff's claims in this matter pursuant to § 1985(3) are, as a matter of law, deficient. The starting point for any

---

**12.** As the Court has found that plaintiff has failed to show any genuine issue of fact on his claim of a liberty interest deprivation, the Court need not address whether qualified immunity attaches to this claim.

**13.** Plaintiff's complaint mirrors, in part, the language of 42 U.S.C. § 1985(3), which provides in part:

If one or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the construed authorities of

any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

analysis of a claim under § 1985(3) is *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), in which the Supreme Court delineated the requirements for an action brought under that section. First, the Supreme Court emphasized that § 1985(3) may not be construed as a "general federal tort law." 403 U.S. at 101–02, 91 S.Ct. at 1797–98. Rather, a plaintiff must demonstrate "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." 403 U.S. at 102, 91 S.Ct. at 1798; *N.Y. State Nat. Organization for Women v. Terry*, 886 F.2d 1339, 1358 (2d Cir.1989). Since *Griffin*, the Court has not insisted that the discriminatory animus be racial in character. In *United Brotherhood of Carpenters & Joiners v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), the Court considered, without deciding, whether the legislative history of the section could be "construed to reach conspiracies aimed at any class or organization on account of its political views or activities," religious affiliation, or even state origin. 463 U.S. at 837, 103 S.Ct. at 3360–61. Even under this less restricted view of § 1985(3), it seems clear that the alleged conspiracy must be directed at a class or group and must involve a showing of discriminatory animus. *See Keating v. Carey*, 706 F.2d 377, 387–88 (2d Cir.1983); *N.Y. State Nat. Organization for Women v. Terry*, 704 F.Supp. 1247, 1259 (S.D.N.Y.), *aff'd as modified*, 886 F.2d 1339 (2d Cir.1989).

Plaintiff has alleged no class-based discriminatory animus in his conspiracy claim. Accordingly, summary judgment must be granted for defendants on plaintiff's claims under § 1985 as a matter of law.

*B) Plaintiff's Motion for Summary Judgment*

Plaintiff has cross-moved for summary judgment on the issue of liability. The Court has already outlined the standard for summary judgment in this Circuit, and notes that, based on the above discussion, plaintiff's only surviving claim is for malicious prosecution. The Court has previously stated that it finds that there are genuine issues of fact going to the question of whether the continuation of the prosecution of Weg after the receipt of the Malamy memorandum constituted malicious prosecution. As there are such genuine issues of fact, the Court cannot grant either party's motion for summary judgment on this issue. As there remain no other outstanding claims against defendants, plaintiff's motion for summary judgment must be denied.

*C) Plaintiff's Motion to Amend the Complaint*

■ Plaintiff has also cross-moved for permission to file a second amended complaint pursuant to Fed.R.Civ.P. 15. Rule 15(a) states that leave to amend a pleading "shall be freely given when justice so requires." *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Accordingly, leave may only be denied for good cause, such as " 'undue delay, bad faith, futility of the amendment and perhaps most important, the resulting prejudice to the opposing party.' " *Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 653 n. 6 (2d Cir.1987), *quoting State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).

The motion now before the Court creates an unusual situation. Plaintiff wishes to add the City of New York and the Board of Education of the City of New York as defendants in this action. In light of the Court's rulings above, plaintiff's proposed amended complaint is not viable. However, that does not mean that proposed addition of defendants should be automatically rejected by the Court if those defendants could be properly be made a party to the surviving claim for malicious prosecution. That issue is not before the Court at this time, and the Court will not address it *sua sponte*.

The Court does find that defendants have failed to show undue prejudice from the proposed addition of institutional defendants. While some additional discovery may be necessary if those defendants are added, the Court cannot find that that alone creates undue harm to the other defendants. Further, mere delay is not a sufficient reason to deny a motion to

amend a pleading. Indeed, in certain instances, amendments may be allowed up to the eve of trial. *Hanlin v. Mitchelson,* 794 F.2d 834 (2d Cir.1986).

Defendants assert that plaintiff's proposed amendments would be futile. "[U]nless a proposed amendment is clearly frivolous or legally insufficient on its face, the court should not consider the substantive merits of a claim or defense on a motion to amend." *Lerman v. Chuckleberry Publishing, Inc.,* 521 F.Supp. 228, 231 (S.D.N.Y.1981), *aff'd,* 745 F.2d 123 (2d Cir.1984), *cert. denied,* 471 U.S. 1054, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985). The Court cannot find, based on the record before it, that the proposed amendments are frivolous or facially insufficient. The Court need not, and will not, determine at this time whether the proposed amendments would survive a properly brought motion to dismiss. Accordingly, plaintiff's motion to amend its complaint to add the City of New York and the Board as defendants is granted.

## CONCLUSION

Defendants' motion for summary judgment is granted, except as to plaintiff's claims alleging malicious prosecution.

Plaintiff's cross-motion for partial summary judgment is denied.

Plaintiff's cross-motion to amend its complaint is granted, to the extent appropriate following this opinion.

The referral of this action to Magistrate Naomi Reice Buchwald for general pretrial is renewed. The parties are instructed to contact Magistrate Buchwald within twenty days of this opinion to arrange a conference before the Magistrate to determine whether further discovery will be necessary in this matter.

Plaintiff shall file its second amended complaint in line with this opinion no later than thirty days from the date of this opinion.

SO ORDERED.