**Dodge WATKINS, Plaintiff,**

v.

**Rosemary McCONOLOGUE, et al., Defendants.**

**No. 90 Civ. 0387 (VLB).**

United States District Court, S.D. New York.

April 13, 1992.

George B. Yankwitt, Robinson, Silverman et al., New York City, for plaintiff.

John J. Cullen, D'Amato & Lynch, New York City, for defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This case involves a dispute between a local school board and a superintendent who was suspended with pay. No public announcement was made and no charges of personal wrongdoing were involved.

Disputes over problems arising in the district led to dissatisfaction on the part of a majority of the board with plaintiff, possibly enhanced by preference of some for a superintendent with greater experience. Plaintiff was suspended with pay but then reinstated on state procedural grounds by the State Commissioner of Education, after which a new suspension with pay was imposed and a formal proceeding with written notice initiated which the Commissioner found proper.

Plaintiff alleges a violation of Fourteenth Amendment due process and has filed pendent state claims for breach of contract and infliction of emotional distress. Both sides have moved for summary judgment; plaintiff's motion is for a declaration of liability on the due process claim.

The matter was referred to United States Magistrate Judge Mark D. Fox, who filed a Report and Recommendation on February 25, 1992, making detailed factual findings. The facts I find dispositive are undisputed: that plaintiff held a high supervisory position, that plaintiff was suspended with pay in a dispute with the school board over what it

regarded as proper functioning of the district, that no defamatory announcement was made, and that no charges of personal wrongdoing were made or circulated.

■ While Judge Fox recommended only denial of plaintiff's motion, the facts he found and his legal analysis, both of which I adopt, and which I amplify as discussed below, lead to the conclusion that plaintiff's Fourteenth Amendment claim cannot be upheld.[1] Consequently, defendants' motion for summary judgment dismissing plaintiff's Fourteenth Amendment claim is granted. Under these circumstances, it would be inappropriate to retain the pendent state claims, which are accordingly dismissed without prejudice.[2]

## II

■ This case presents only claims of denial of procedural due process. It involves no First Amendment or other independent federally protected rights. Under the circumstances described above, the only cognizable loss to plaintiff was in the ability to fulfill the function of superintendent for a limited period, and no liberty or property interest was infringed.[3] Loss of prestige due to the dispute with the school board cannot

be recognized without permitting as bases for federal litigation, every up and down in the fortunes of highly visible public servants who are, by the very nature of their activities, subject to criticism.[4]

Plaintiff lost no money and was not defamed by any negative announcement,[5] or a dismissal for harmful reasons. In the context of a dispute between a public sector employee and a governing body, the Supreme Court has specifically suggested the course taken by the defendants as a way appropriately to discharge their own duty to supervise the large-scale activities within their charge, while avoiding harm to liberty or property of their employees:

"... in ... situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 544–45, 105 S.Ct. 1487, 1494–95, 84 L.Ed.2d 494 (1985).

As indeed foreshadowed by *Loudermill*, it has been specifically indicated that "suspension with pay does not raise due process concerns," *Hicks v. City of Watonga*, 942 F.2d 737, 746 n. 4 (10th Cir.1991). A similar

1. The Magistrate Judge stated in his Report and Recommendation at 11–12 that "in light of the authorities and the instant record, the instant suspension with pay followed by a full evidentiary hearing, which has not been completed, did not violate Watkins' right to due process of law."

2. While plaintiff's Fourteenth Amendment claim is lacking in merit, it presented substantial questions and was not frivolous. Where an officer exercising policymaking or high supervisory functions is displaced from actual performance of duty by the means described by Judge Fox, through discretionary actions which are constitutionally permissible but which did not provide the kind of procedure required by state law on state administrative appeal, it is logical to expect that the distinctions between state-required and federally required processes are not always clearly discernible in advance. Under all the circumstances, an award of attorney's fees to defendants as prevailing parties under 42 U.S.C. § 1988 would appear inappropriate.

3. A deeper question need not be considered here. Where no other federal rights are involved, to what extent is Fourteenth Amendment procedural due process to impose procedural obligations upon public sector employers which are not imposed by law on the private sector, where the

state acts in a service-providing capacity rather than in employing sovereign compulsion apart from that implicit in the taxing power?

If the Fourteenth Amendment were interpreted as not providing procedural protections to public employees solely by virtue of employment by a public rather than private employer alone, there would be no adverse effect upon those rights of public employees presently protected by the First Amendment, by application of the Due Process clause in other respects, or by the prohibition of the Equal Protection Clause against invidious discrimination. Nor would it adversely affect relief under the Contract Clause where a state impairs the obligation of a contract with itself, and where state remedies are inadequate.

4. This would in effect chill public criticism by those on public bodies concerning public figure public servants holding high positions, adversely affecting the robust public debate concerning public figures contemplated by, e.g., *Bose Corp. v. Consumers Union*, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984); *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

5. Plaintiff's attorney appears to have released some information.

ruling was made by Judge Leisure of this court in *Weg v. Macchiarola,* 729 F.Supp. 328, 338 (S.D.N.Y.1990).

Insofar as the non-financial harm alleged by plaintiff, the administrative remedy available was in fact used. It led to a favorable result with respect to the suspension and whatever aura it may have projected. Moreover, a formal hearing was scheduled, providing further opportunity for plaintiff to refute any charges. And most pertinently, as explained by Judge Leisure in some detail in *Weg* at 338–39, the sting sufficient to infringe a liberty interest has been found only where harmful criticism was accompanied by *dismissal* without adequate procedural safeguards—at least absent a deliberate campaign of defamation not involved here.

No liberty or property interest of plaintiff was infringed.

### III

Even had the threshold question of impingement upon liberty or property interests been passed, a balance would still have had to be struck as to what process was due under the circumstances. This in turn would have involved seeking a balance between reasonable protection of the interests of the public sector employee and "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983), quoting *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968).

This is especially important where a high-level supervisory employee such as a superintendent of schools, rather than having " 'very limited, if any, responsibility' with respect to the overall operation" of the organization, must "formulate plans for the implementation of the broad goals of the office," *Branti v. Finkel,* 445 U.S. 507, 511, 100 S.Ct. 1287, 1291, 63 L.Ed.2d 574 (1980) (dealing with an assistant public defender and suggesting that even where, as there but not in the present case, First Amendment rights were involved, the factors mentioned were critical).

In this type of case, apart from breach of contract claims not presently under discussion, it is important for local boards of education and similar local decisionmakers to be able, at least as far as the Federal Constitution is concerned, to remove high level supervisory officials from actual performance of duty if they disagree with the officials' policy decisions and philosophy or approach, even if no wrongdoing, impropriety, or misconduct is involved.

■ Thus, in the context of a high official with broad authority and responsibility, due process would appear to be satisfied if a post-suspension hearing was scheduled, even if the suspension with pay and the intramural debate necessarily preceding affected a liberty or property interest. Such a post-suspension hearing would give the official the opportunity to rebut any charges, particularly where no hostile public statement was released. The reasoning of the decisions finding no violation of any constitutional liberty or property interest in this context would appear to support that result, as does the necessity for robust debate concerning public figures. Political restraints are the first line of defense against abuses by public officials.[6] The system will not function effectively if the decisionmakers to be restrained may not be removed from duty quietly and with pay without prior formal proceedings. Moreover, state procedures, as illustrated by the revocation of the initial suspension here, are available and appear to go well beyond federal due process requirements.

Plaintiff's unhappiness with his suspension, even with pay, is understandable. If the decision to suspend was unwise or erroneous, it should be redressed by local policy decisionmakers, or by state procedures such as those already invoked, which appear adequate to satisfy due process in the context of this case.

SO ORDERED.

**6.** See Powell, *"Carolene Products* Revisited," 82 Colum.L.Rev. 1087 (1982), discussing *United States v. Carolene Products Co.,* 304 U.S. 144, 152–53 n. 4, 58 S.Ct. 778, 783–84 n. 4, 82 L.Ed. 1234 (1938) (Stone, J.).