**Patricia A. FEERICK, Orlando Rosario, John DeVito, and Mayra Schultz, Plaintiffs,**

v.

**Joan SUDOLNIK, Supreme Court Judge, as a Justice of the Supreme Court of New York, Robert Morgenthau, District Attorney of New York County, and the District Attorney's Office of New York County, Lawrence "Larry" Stevens, individually and as an Assistant District Attorney for the New York County District Attorney's Office, Sarah "Sally" Strauss,**

individually and as an Assistant District Attorney for the New York County District Attorney's Office, Lee P. Brown, as Police Commissioner of the City of New York, and the Police Department of the City of New York; and D.I. Joseph Di-Martini, Lt. Kim Foley, Sgt. William Harvey, Det. Robert Miller, Lt. John Laine, and the Internal Affairs Division, all of the New York City Police Department, Defendants.

No. 92 Civ. 6539 (JFK).

United States District Court,
S.D. New York.

Feb. 17, 1993.

Dienst & Serrins, New York City (Richard A. Dienst, of counsel), for plaintiffs.

O. Peter Sherwood, Corp. Counsel of the City of New York (Antonia Kousoulas, of counsel), for defendants Brown, Police Dept., DiMartini, Foley, Harvey, Miller, Laine and Internal Affairs Div.

Robert M. Morgenthau, Dist. Atty. of New York County (Sylvia Wertheimer, Mark Dwyer, of counsel), for defendants Morgenthau, Dist. Attorney's Office, Stevens, and Strauss.

Robert Abrams, Atty. Gen. of the State of N.Y. (Lisa M. Evans, of counsel), for defendant Sudolnik.

## OPINION AND ORDER

KEENAN, District Judge:

### INTRODUCTION

Before the Court are the defendants' motions to dismiss the complaint under the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), or, in the alternative, for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). Plaintiffs, who were all police officers in the New York City Police Department ("NYPD"), commenced this action pursuant to Sections 1983 and 1985 of Title 42 of the United States Code ("U.S.C."), alleging violations of their rights protected under the Fifth and Fourteenth Amendments to the United States Constitution. For the reasons set forth below, defendants' motions are granted in part and denied in part.

### BACKGROUND

On September 26, 1990, the plaintiffs conducted a search in a low-income housing project in New York City, looking for a police radio allegedly stolen by drug dealers. The officers claim to have been acting on a tip from a confidential informant that a certain drug-selling gang located in the housing project possessed the radio. After the police probe, which failed to find the radio, the tenants whose apartments had been searched filed a complaint against the plaintiffs with the Civilian Complaint Review Board ("CCRB").[1] Later that day, a security officer working at the housing project found the radio and returned it to the plaintiffs' precinct.

---

1. Plaintiffs allege that members of the drug ring filed the complaint.

Several days after the search, the Manhattan North Field Internal Affairs Unit ("MNFIAU") began an investigation, which included the confiscation of the plaintiffs' memorandum books. The New York County District Attorney's Office ("the DAO") also commenced an investigation, but it revealed little as the plaintiffs all asserted their Fifth Amendment right. In an official memorandum sent to the NYPD on January 11, 1991, the DAO announced that it would not criminally prosecute the plaintiffs and that the NYPD should proceed administratively against the plaintiffs.

On January 18, 1991, plaintiff Feerick was interrogated pursuant to Patrol Guide 118–9 ("P.G. 118–9") at the MNFIAU. P.G. 118–9 confers a form of testimonial or use immunity resulting from any statements, evidence, or leads derived from that interrogation. Defendant Foley of the NYPD, allegedly monitored the interrogation, while defendants Laine of the Internal Affairs Division of the NYPD ("IAD") and DiMartini of the MNFIAU were also present. Defendant Foley monitored P.G. 118–9 interrogations of plaintiffs Rosario, Schultz, and DeVito at the MNFIAU later that week. Plaintiff Feerick was interrogated again in March of 1991. In mid-April, 1991, all plaintiffs were served with Departmental Charges and Specifications.

On March 20, 1992, the DAO empaneled a grand jury, which indicted the plaintiffs on 30 counts arising out of the September 26, 1990 search. These counts included second degree burglary, second degree unlawful imprisonment, second degree coercion, and second degree grand larceny. Plaintiffs sought to enjoin the prosecution by filing a petition pursuant to Article 78 of the New York Civil Practice Laws and Rules 78 in the First Department of New York's Appellate Division. In their Article 78 petition, plaintiffs requested the Appellate Division to consider only the relevant provisions of the New York State Constitution, citing their desire to preserve their federal claims for a Section 1983 action. The petition was denied.[2]

Plaintiffs also brought this civil rights action against the judge currently handling the state criminal case; the DAO, the head of its office, and two members thereof; and the NYPD, its commissioner, certain employees, and the IAD. The gravamen of the plaintiffs' complaint is that the state criminal indictment filed against them is improperly derived from the immunized testimony, and therefore violates their constitutional privilege against self-incrimination. They request that this Court: (1) enjoin the criminal prosecution brought against them in the Supreme Court of New York; (2) declare them immune from state criminal prosecution; (3) reinstate them in the New York City Police Department with back pay; (4) order the NYPD to appoint plaintiff Feerick to the rank of Captain; (5) enjoin future attempts at securing indictments via immunized testimony under P.G. 118–9; and (6) direct defendants to train and supervise their employees concerning the proper use of the P.G. interrogation provisions.

## DISCUSSION

### A. Younger *Abstention*

█ In *Younger v. Harris*, 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971), the Supreme Court announced that federal courts should abstain from interfering with pending state criminal prosecutions, unless there is a showing of "great and immediate" irreparable harm. This policy is compelled by the interests of federalism, comity, and equity. *See id.* at 43–44, 91 S.Ct. at 750; *Davis v. Lansing*, 851 F.2d 72, 76 (2d Cir. 1988). The Supreme Court has held that *Younger* abstention applies to both injunctive and declaratory relief. *See Samuels v. Mackell*, 401 U.S. 66, 73, 91 S.Ct. 764, 768, 27 L.Ed.2d 688 (1971). Where the relief requested also includes monetary damages that are unavailable in the state proceeding, as in the present case, then the court should stay rather than dismiss the federal action for damages. *See Deakins v. Monaghan*, 484 U.S. 193, 202, 108 S.Ct. 523, 529, 98 L.Ed.2d 529 (1988).

2. The Appellate Division denied plaintiffs' motion, and the Court of Appeals refused to grant plaintiffs' leave to appeal the lower court's ruling.

■ Exceptions to the doctrine of *Younger* abstention are quite narrow. Even irreparable injury, unless "both great and immediate," is insufficient to warrant an exception to this policy. *See Younger*, 401 U.S. at 46, 91 S.Ct. at 751. For instance, "the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution" does not establish the sort of irreparable injury that would permit federal interference in the state proceedings. *Id.* The *Younger* Court set forth an exception in its distinguishing of *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), in which it had approved federal intervention in an ongoing state prosecution. The *Younger* Court noted that in *Dombrowski*, prosecutors had harassed the appellants and had attempted to discourage them and their supporters from vindicating the constitutional rights of African–American citizens in Louisiana. *See Younger*, 401 U.S. at 48, 91 S.Ct. at 752. Such harassment "sufficiently establish[ed] the kind of irreparable injury, above and beyond that associated with the defense of a single prosecution brought in good faith, that had always been considered to justify federal intervention." *Id.* The Court has since defined a finding of prosecutorial bad faith as requiring a showing that the charges against the plaintiffs were instituted with "no genuine expectation" of their eventual success, but only to discourage the exercise of the plaintiffs' constitutional rights. *See id.; Allee v. Medrano*, 416 U.S. 802, 819, 94 S.Ct. 2191, 2202, 40 L.Ed.2d 566 (1974).

■ In addition to this exception for prosecutorial bad faith, the *Younger* Court also left room for an exception where "extraordinary circumstances" exist such that the "necessary irreparable injury can be shown even in the absence of the usual prerequisites of bad faith and harassment." *Id.* at 54, 91 S.Ct. at 755. An example of such extraordinary circumstances that would warrant federal equitable relief would be when state officials seek to enforce a law that is "flagrantly and patently violative of express con-stitutional prohibitions." *Younger*, 401 U.S. at 54–55, 91 S.Ct. at 755.

■ Despite the expansive reach of *Younger* abstention, plaintiffs assert that their circumstances warrant an exception to *Younger*. First, they maintain that prosecutorial bad faith exists in this case. In particular, they claim that the DAO used their immunized testimony to procure the indictment against them. They point to the DAO's determination in January of 1991 not to prosecute them and its suggestion that the NYPD proceed administratively. Plaintiffs claim that the DAO made this suggestion knowing that there were no policies or procedures in place that would protect and shield the plaintiffs' immunized testimony from the future examination by the DAO. They also assert that the DAO knew that it would have access to MNFIAU and IAD case folders, investigatory materials, and copies of the work sheets and investigative reports following the P.G. 118–9 interrogations. In the alternative, plaintiffs maintain that these same facts constitute the "extraordinary circumstances" envisioned by the *Younger* Court to require equitable intervention by the federal courts.

■ The Court disagrees. There is no dispute that the plaintiffs were entitled to use immunity for the statements made in connection with the P.G. 118–9 interrogations. *See Kastigar v. United States*, 406 U.S. 441, 460–61, 92 S.Ct. 1653, 1664–65, 32 L.Ed.2d 212 (1972). Defendants concede this. Nevertheless, even if immunized testimony was used to acquire the indictment against plaintiffs—an accusation the defendants steadfastly deny—plaintiffs' claims for injunctive and declaratory relief still would fail under the *Younger* abstention doctrine. Plaintiffs cannot allege that they have been prevented from asserting their constitutional claims pursuant to *Kastigar*: in the state proceeding, the DAO has already consented to a *Kastigar* hearing, in which the DAO will have to show that the evidence used to obtain the indictment was obtained from sources independent of the immunized testimony. *See Kastigar*, 406 U.S. at 460–61, 92 S.Ct. at 1664–65.[3] The burden upon the DAO to missions.

---

**3.** Indeed, the state court judge, defendant Justice Sudolnik, is currently reviewing the parties' sub-

prove that the indictment was not obtained from immunized testimony is "heavy," *see id.* at 461, 92 S.Ct. at 1665, as the DAO must show that its evidence "is derived from a legitimate source wholly independent of the compelled testimony." *Id.* at 460, 92 S.Ct. at 1664–65.

Furthermore, plaintiffs have failed to prove why it would be more appropriate for this federal court, instead of the state court, to conduct such a hearing. They have not alleged that Justice Sudolnik, who is presiding over the state proceeding and who is named only as a nominal defendant, *see* Amended Complaint ¶ 6, is somehow biased, as was the state optometry board that the Supreme Court enjoined in *Gibson v. Berryhill,* 411 U.S. 564, 580–81, 93 S.Ct. 1689, 1698–99, 36 L.Ed.2d 488 (1973). In *Kugler v. Helfant,* 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975), the Supreme Court held that abstention was appropriate where plaintiff, a municipal court judge, sought to enjoin a state prosecution against him for obstruction of justice that allegedly arose from his coerced testimony before a grand jury. *See Kugler,* 421 U.S. at 130–31, 95 S.Ct. at 1533–34. The *Kugler* Court found that since plaintiff had an opportunity to raise his constitutional claims in the underlying state criminal prosecution and since he failed to allege that no trial judge in the prosecuting state could impartially decide his case, the policy of equitable restraint required abstention. *See id.* at 124, 95 S.Ct. at 1530–31. As in *Kugler,* plaintiffs here fail to rebut the presumption that "ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." *Id.*

■ In addition, the courts that have held that an exception to *Younger* was warranted have found that the prosecutors brought the cases without a reasonable expectation of obtaining a valid conviction, *see, e.g., Allee,* 416 U.S. at 819, 94 S.Ct. at 2202; *Kugler,* 421

U.S. at 126 n. 6, 95 S.Ct. at 1531 n. 6, or initiated them to retaliate for or discourage the exercise of constitutional rights. *See, e.g., Dombrowski,* 380 U.S. at 497, 85 S.Ct. at 1126–27 (prosecution brought to deter plaintiffs' civil rights efforts); *Fitzgerald v. Peek,* 636 F.2d 943, 945 (5th Cir.) (per curiam), *cert. denied,* 452 U.S. 916, 101 S.Ct. 3051, 69 L.Ed.2d 420 (1981) (prosecution brought to deter filing of civil suit against state officers); *Wilson v. Thompson,* 593 F.2d 1375, 1388 (5th Cir.1979) (prosecution brought to harass and punish plaintiffs for exercising first amendment rights against state officials); *Shaw v. Garrison,* 467 F.2d 113, 122 (5th Cir.), *cert. denied,* 409 U.S. 1024, 93 S.Ct. 467, 34 L.Ed.2d 317 (1972). Plaintiffs have not pled the former, and, as for the latter, they have at most pled that defendants have deliberately violated their civil rights to bring their alleged criminal conduct to light.

■ Finally, plaintiffs' reliance upon *Rowe v. Griffin,* 676 F.2d 524 (11th Cir.1982), in making their assertion that the defendants alleged conduct is *per se* a bad faith prosecution is unfounded. Even though *Rowe* held that an indictment that violated a prior immunity agreement constituted a "bad faith" prosecution, *Rowe* is distinguishable from the present case. *Rowe* involved transactional, not use, immunity.[4] Because transactional immunity contemplates complete protection from prosecution for the offense to which the compelled testimony relates, *see Kastigar,* 406 U.S. at 453, 92 S.Ct. at 1661, the prosecution of the *Rowe* plaintiff was in bad faith *per se.* In the case at bar, however, plaintiffs received only use immunity for their P.G. 118–9 statements,[5] and thus prosecuting them could not be bad faith *per se.* Instead, plaintiffs have presented a factual question of whether the DAO used their immunized statements to secure the indictment. Pursuant to *Kastigar,* 406 U.S. at 460–61, 92 S.Ct. at 1664–65, they have asserted their constitu-

---

4. The *Rowe* plaintiff was an FBI informant who had received absolute immunity from federal and state prosecutors in return for his cooperation in the investigation and testimony against two individuals originally charged with the murder. *See Rowe,* 676 F.2d at 525.

5. P.G. 118–9 provides that all who are interrogated under its provisions are given the following warning: "If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceedings."

tional right to have such a determination made by the presiding state court judge. She is the proper arbiter to decide this dispute.

■ Plaintiffs' claims for injunctive and declaratory relief fail to fit within either of *Younger*'s narrow exceptions and therefore are dismissed pursuant to the doctrine of *Younger* abstention. Given that the application of this doctrine to claims for money damages is unwarranted, *see Deakins,* 484 U.S. at 202, 108 S.Ct. at 529, the Court will now address plaintiffs' remaining claims for monetary damages.

### B. Defendants' FRCP 12(b)(6) Motions

#### 1. The Applicable Legal Standard

In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974); *Yoder v. Orthomolecular Nutrition Inst., Inc.,* 751 F.2d 555, 562 (2d Cir.1985). Moreover, the Court must accept the factual allegations set forth in plaintiff's complaint as true. *See Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964). Accordingly, a motion to dismiss for failure to state a claim should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

#### 2. Plaintiffs' Section 1983 Claims

■ To sustain a cause of action pursuant to 42 U.S.C. § 1983,[6] plaintiff must show that the conduct complained of was committed by a person under the color of state law and that this conduct deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct.

1908, 1912–13, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). In this case, plaintiffs have pled a direct violation of their constitutional rights and a conspiracy to violate these rights, and they may seek money damages for both causes of action.

■ Addressing each defendant, all claims against Justice Sudolnik have been dismissed, as plaintiffs named her only as a nominal defendant. *See* Amended Complaint ¶ 6. As such, Justice Sudolnik cannot be held liable for monetary damages.

■ Defendants Stevens and Strauss, both Assistant District Attorneys with the DAO, and defendant District Attorney Robert Morgenthau are absolutely immune from personal liability for actions taken in initiating a prosecution. *See Imbler v. Pachtman,* 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). Plaintiffs' brief does not take issue with this proposition. Therefore, plaintiffs' claims against these defendants in their individual capacities are dismissed. As for claims against defendants Stevens and Strauss in their official capacities, they are also dismissed. Plaintiffs assert that defendants Stevens and Strauss were municipal policymakers. Nevertheless, "only actions by officials relatively high up in the municipal hierarchy will produce municipal liability." *Walker v. City of New York,* 974 F.2d 293, 296–97 (2d Cir.1992). The Amended Complaint itself refers to the defendants as defendant Morgenthau's "subordinates." *See* Amended Complaint ¶ 30(e). The assistants' decisions to seek an indictment against the plaintiffs, and to proceed with the grand jury presentation in a particular fashion were individual exercises of judgment and did not reflect municipal policy. Furthermore, as subordinates, they could not be responsible for any "failure to train and supervise," such

---

**6.** Section 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

as plaintiffs repeatedly proclaim was the cause for the alleged violations herein.

■ Monetary claims against defendant Morgenthau in his official capacity and defendant DAO are also dismissed. The causes of action against defendants Morgenthau and the DAO arise from alleged decisions that were inextricably tied to the specific decision to prosecute. When the DAO makes such decisions, it is acting in a quasi-judicial capacity and thus is representing the state, not the county. *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir.1988), *cert. denied*, 488 U.S. 1014, 109 S.Ct. 805, 102 L.Ed.2d 796 (1989); *Gentile v. County of Suffolk*, 926 F.2d 142, 152 n. 5 (2d Cir.1991); *Walker*, 974 F.2d at 301. Thus, the 11th Amendment protects the DAO from Section 1983 liability while it acts as a state representative.

■ Plaintiffs argue that the Second Circuit's *Walker* decision precludes dismissal of their claims against defendants Morgenthau and DAO. The Court disagrees for two reasons. First, as mentioned above, *Walker* recognizes that the DAO acts as a state body when making its specific decisions to prosecute. *See Walker*, 974 F.2d at 301. Second, the facts in *Walker*, which found viable a Section 1983 claim for municipal liability arising from a DAO's alleged failure to train or supervise, are far different from the circumstances before this Court. *Walker* involved an assistant district attorney in Kings County whose perjury and withholding of *Brady* evidence resulted in the plaintiff's spending 19 years of his life in prison for a murder that he did not commit. *See* 974 F.2d at 294. The present case, however, involves the alleged use of P.G. 118–9 testimony that is entitled to use immunity. Unlike *Brady* and perjury issues, which may arise in every state criminal case, use-immunity concerns arising from P.G. 118–9 testimony are rarely at issue in criminal proceedings. *Cf. East Coast Novelty Co. v. City of New York*, 809 F.Supp. 285, 299 (S.D.N.Y.1992) (distinguishing *Walker* and dismissing claims for municipal liability based upon DAO misconduct due to relative infrequency of possible prosecutorial misconduct involving Section 270.00 of the New York Penal Law in comparison with *Brady* obligations). This Court's failure to distinguish between the alleged misuse of P.G. 118–9 testimony and an assistant district attorney's failure to comply with *Brady* obligations would substantially undercut the DAO's traditional prosecutorial and state immunities, as most challenges to prosecutorial conduct would then be transformed into failure-to-supervise-or-train claims. Therefore, the Court dismisses the causes of action for monetary damages against defendants Morgenthau and the DAO.

■ Plaintiffs' pleading, however, is sufficient to sustain a claim for monetary damages against the police department defendants. Plaintiffs have pled sufficient facts to confer liability upon defendant police officers, who lack the absolute immunity conferred upon defendants Stevens and Strauss. Furthermore, plaintiffs' claims against defendants Brown, NYPD, and IAD also survive defendants' motions to dismiss. Unlike defendants Morgenthau and the DAO, defendants Brown, NYPD, and IAD are undoubtedly municipal policymakers. In the amended complaint, plaintiffs allege that an official policy or custom of the NYPD deprived them of their constitutional rights, satisfying *Monell v. Dep't of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). The plaintiffs also allege, in accordance with *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989), that the NYPD, as a municipal policymaker, should have known that such inadequate training or supervision was "so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." In particular, plaintiffs have pled that the NYPD failed to train or supervise its officers regarding the handling of P.G. 118–9 interrogations and the need to separate the investigative and interrogative agencies within the NYPD and the DAO.

■ Finally, plaintiffs also claim that the NYPD and DAO defendants conspired to violate plaintiffs' constitutional rights, also in violation of Section 1983. Because one may conspire with another who is immune from prosecution, *see Dennis v. Sparks*, 449 U.S.

24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980), and plaintiffs have adequately pled a cause of action for conspiracy, the Section 1983 conspiracy claim survives as to the NYPD defendants.

### C. *Plaintiffs' Section 1985 Claim*

 For plaintiffs' § 1985(3) claim to be sustained, plaintiffs must allege with sufficient specificity the existence both of a conspiracy to prevent or to hinder the state authorities from giving or securing to all persons within the state or territory equal protection of the laws and of a racial or other class-based discriminatory animus behind the conspirator's actions. *See Bray v. Alexandria Women's Health Clinic,* —— U.S. ——, ——, 113 S.Ct. 753, 756, 122 L.Ed.2d 34, 61 U.S.L.W. 4080, 4081 (1993); *United Brotherhood of Carpenters & Jones, Local 610 v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). "A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.), *cert. denied,* 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed.2d 158 (1983); *see also Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987).

 Plaintiffs' Section 1985 claims must be dismissed for failure to state a claim upon which relief may be granted. Plaintiffs fail to establish the existence of any class-based discriminatory animus towards them. Furthermore, their allegations of a conspiracy are an example of the sort of conclusory charges that have been held to be fatal to a Section 1985 claim.

### CONCLUSION

For the reasons set forth above, defendants' motions are granted in part and denied in part. Pursuant to *Deakins,* 484 U.S. at 202, 108 S.Ct. at 529, plaintiffs claims pursuant to Section 1983 for monetary damages against defendants Brown, NYPD, IAD, DiMartini, Foley, Harvey, Miller, and Laine are stayed until the completion of the state criminal proceedings. All other claims against all other defendants are dismissed. The Court orders that this case be placed on its suspense docket. The parties are to report in writing to this Court concerning the status of the state action by July 1, 1993.

**SO ORDERED.**