**James F. SMITH, Plaintiff,**

v.

**Honorable Kenneth GRIBETZ, District Attorney, Rockland County, The Office of the District Attorney, Rockland County, New York, Orange & Rockland Utilities, Inc., John and Jane Does I through X, Edwin Stier and Stier, Anderson & Malone, Defendants.**

**No. 95 Civ. 2302(WCC).**

United States District Court,
S.D. New York.

March 6, 1997.

---

Fischer Weisinger Caliguire & Porter,
New York City (Jay D. Fischer, Arthur L.

Porter, Mitchel J. Shornick, James E. Burden, of counsel), for Plaintiff.

County Attorney, County of Rockland, New York City, NY (Thomas E. Walsh, II, Assistant County Attorney, of counsel), for Defendants Honorable Kenneth Gribetz, District Attorney, Rockland County and the Office of the District Attorney, Rockland County, New York.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge:

Plaintiff James F. Smith brings this action pursuant to 42 U.S.C. § 1983. Plaintiff initially alleged violations of his constitutional rights by the former district attorney of Rockland County, New York, Kenneth Gribetz ("District Attorney").[1] Plaintiff subsequently filed an amended complaint in which he named as additional defendants the Office of the Rockland County District Attorney; plaintiff's former employer, Orange and Rockland Utilities, Inc.; the law firm of Stier, Anderson & Malone; and Edwin Stier, a partner in that firm (hereinafter Orange and Rockland Utilities, Mr. Stier, and his law firm are collectively referred to as the O&R Defendants).

Plaintiff contended that the defendants violated 42 U.S.C. § 1983 by engaging in actions that deprived him of his rights under the Fifth, Sixth, and Fourteenth Amendments. In addition, plaintiff asserted pendent state law claims of malicious prosecution and abuse of process against the O&R Defendants. Subsequently, plaintiff settled his claims against the O&R Defendants, and these claims are no longer before the court. The District Attorney and the Office of the District Attorney ("D.A.Defendants") now move to dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted.

## BACKGROUND

Plaintiff served as the chief executive officer and chairman of the board of Orange & Rockland Utilities, Inc ("O&R"). In August 1993, a vice-president of O&R was arrested and charged with criminal misconduct relating to her employment at O&R. Shortly thereafter, Judge Ingrassia, the administrative judge for the ninth judicial district of New York, ordered a special investigative grand jury impaneled to investigate any criminal conduct involving O&R or its employees. In late August 1993, Smith initiated the appointment of a Special Committee of the Board of Directors to oversee an internal investigation at O&R. The Special Committee eventually retained the law firm of Stier, Anderson & Malone to conduct the investigation.

On October 7, 1993, O&R terminated plaintiff's employment and entered into a cooperation agreement with the District Attorney's Office pursuant to which O&R agreed, *inter alia*, to provide the District Attorney with unfettered access to all of O&R's relevant corporate records as well as to any evidence and analysis produced by Stier, Anderson & Malone in the course of its investigation. In exchange for O&R's cooperation, the District Attorney agreed not to file criminal charges against O&R.

In March 1994, O&R filed a civil action in Rockland County Supreme Court alleging that plaintiff misused approximately $366,000 in corporate funds and property. Shortly thereafter, Justice Miller compelled arbitration of O&R's claims pursuant to a provision in plaintiff's employment contract. On March 21, 1994, the grand jury indicted Smith. That same grand jury returned a superseding indictment on June 12, 1994, charging Smith with twenty-four counts of larceny and falsifying business records. Each count stems from Smith's alleged improper use of corporate funds and property for personal purposes. The indictment charged Smith with the misappropriation of a total of approximately $45,000.

In a motion dated July 20, 1994, Smith moved before Rockland County Court Judge Robert Meehan to dismiss the indictment on the grounds that the grand jury had been denied exculpatory information about smith and that it was impermissibly biased against

1. In early 1995, Kenneth Gribetz resigned his position as district attorney.

him.[2] Moreover, plaintiff claimed that the conduct for which he was indicted was not criminal, that he was a victim of selective prosecution, and that O&R had improperly influenced the district attorney's decision to proceed against him. Judge Meehan denied plaintiff's motion on October 19, 1994. Smith then applied to the Appellate Division for a Writ of Prohibition, which was denied, and to the court of appeals for leave to appeal, which was also denied.

On December 1, 1994, plaintiff again moved for a dismissal of the indictment, repeating may of his previous allegations. Judge Meehan denied this motion on February 10, 1995. Also on that date, Judge Meehan granted Smith's motion to preclude the State's introduction at trial of evidence of uncharged crimes. After the case was transferred to Justice Colabella, plaintiff moved to dismiss the indictment on the ground that he had been prejudiced by the District Attorney's submission to the grand jury of evidence of uncharged conduct. On May 3, 1995, Justice Colabella, having examined the grand jury minutes, concluded that no grand jury misconduct had occurred.

On April 6, 1995, plaintiff commenced this civil rights action seeking damages and an order enjoining the New York State criminal proceeding against him. We denied plaintiff's request for injunctive relief and observed that plaintiff "raised each of his federal constitutional arguments in a motion to dismiss the indictment that was included in his Omnibus Motion made before Judge Meehan in Rockland County Court.... We have no doubt that plaintiff has been afforded a full and fair opportunity to air his federal constitutional claims in New York state court." Opinion and Order dated May 26, 1995, at 10–11. However, we also denied a motion by the District Attorney to dismiss and ordered that plaintiff's action be placed on this court's suspense docket pending the resolution of the criminal prosecution in state court.

Plaintiff's criminal trial commenced on June 5, 1995. Shortly thereafter, Justice Colabella, based on statements of a witness during cross-examination, found that the State had failed to disclose potentially exculpatory material and directed the State to provide plaintiff with that material immediately. On August 15, 1995, after denying plaintiff's motion for a trial order of dismissal, Justice Colabella acquitted plaintiff of all charges. In mid-September, plaintiff filed an Amended Complaint with this court in which he named the Rockland County District Attorney's Office, O&R, the Stier law firm, and Edwin Stier as additional defendants.

## DISCUSSION

### I. The District Attorney Defendants' Motion to Dismiss

■ The D.A. Defendants move to dismiss plaintiff's Amended Complaint for failure to state a claim. The D.A. Defendants contend that absolute immunity shields them from liability for their quasi-judicial actions and that plaintiff failed to allege any conduct on their part for which they are not entitled to immunity.[3]

When deciding a motion to dismiss under Rule 12(b)(6), a court must accept as true all

---

**2.** O&R, presumably seeking to repair its damaged reputation with its customers, had mailed a series of informational notices to the ratepayers along with their utility bills. In March 1994, while the grand jury that indicted Smith was sitting, each customer received a notice discussing the progress of O&R's internal investigation and announcing a total rebate of approximately sixty cents per customer based on the investigation's finding, as of that date, that approximately $345,000 had been misappropriated.

**3.** The D.A. Defendants also contend that the Amended Complaint's common-law claims against them should be dismissed because of plaintiff's failure timely to file a Notice of Claim as required by New York law. Plaintiff acknowledges that the "Amended Complaint does not name the DA Defendants as defendants in the common law actions of malicious prosecution and abuse of process. Smith has alleged no common law tort against a municipal officer." Plaintiff's Brief at 48. Thus, to the extent the D.A. Defendants seek to dismiss plaintiff's common-law tort claims, the issue is moot. Plaintiff's civil-rights claims are unaffected by plaintiff's alleged failure to comply with New York's provisions, because state notice-of-claim statutes cannot bar section 1983 relief. *Felder v. Casey*, 487 U.S. 131, 152–53, 108 S.Ct. 2302, 2313–15, 101 L.Ed.2d 123 (1988).

The D.A. Defendants further urge that, to the extent plaintiff alleges negligence as a basis for his section 1983 claims, the claims must be dismissed. We agree. Plaintiff alleges that the D.A. Defendants "knew or, within the exercise of rea-

well-pleaded factual allegations of the complaint and must draw all inferences in favor of the pleader. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir.1993). "[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *International Audiotext Network, Inc. v. American Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991), *cert. denied sub nom., Cortec Indus. v. Westinghouse Credit Corp.*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992)). Dismissal is warranted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). "The latter principle is to be applied with particular strictness when the plaintiff complains of a civil rights violation." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991). However, a motion under 12(b)(6) should be granted if an affirmative defense or other bar to relief such as the immunity of the defendants is apparent from the face of the complaint. *See Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).[4]

### A. The District Attorney

■■■ The doctrine of absolute prosecutorial immunity creates a formidable obstacle for a plaintiff seeking to maintain a civil rights action against a district attorney in his individual capacity.[5] *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1147 (2d Cir.1995). The Second Circuit has defined prosecutorial immunity from section 1983 liability as covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir.1994). This immunity ensures "the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Imbler* 424 U.S. at 427–28, 96 S.Ct. at 993–94.

■■■ In assessing a prosecutor's claim of absolute immunity, the court must inquire whether the actions in question are part of a prosecutor's traditional function and whether they are closely associated with the judicial process. *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir.1996). A district attorney acting in his role as advocate for the State is absolutely immune from civil liability for "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Buckley v. Fitzsimmons*, 509 U.S. 259, 272, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993) (quoting *Imbler*, 424 U.S. at 431 n. 33, 96 S.Ct. at 994 n. 33). For example, a prosecutor is often immune from liability when evaluating and organizing evidence for presenta-

sonable care and investigation, should have known" of the existence of exculpatory evidence, Amended Complaint at ¶ 18, and that the D.A. Defendants "intentionally and/or negligently" prevented the grand jury from obtaining exculpatory information. Id. at ¶ 32. However, a claim that a state actor acted with mere negligence does not state a deprivation of constitutional rights. *Salim v. Proulx*, 93 F.3d 86, 92 (2d Cir.1996) (citing *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 662–63, 88 L.Ed.2d 662 (1986)).

4. Plaintiff cites *Baker v. Cuomo*, 58 F.3d 814 (2d Cir.1995), for the proposition that dismissal pursuant to 12(b)(6) is inappropriate when a complaint sets forth a novel legal theory. *Baker* is inapposite because, although plaintiff's criminal prosecution may have been somewhat unique, his section 1983 claims do not implicate novel and important legal issues on a par with those raised in *Baker*. Moreover, in *Baker* the district

court dismissed, sua sponte and without elaboration, the pro se plaintiffs' cause of action. In doing so, the district court did not rely on a bar such as absolute immunity, but concluded that the complaint itself was without merit. *Baker* is thus distinguishable from the instant case.

5. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529–30 (2d Cir.1993). We note that the Amended Complaint is silent as to the capacity in which Gribetz is sued. However, the failure of a complaint to specify that claims against a district attorney are asserted against that official in his individual capacity does not warrant dismissal at the pleading stage. *Id.* The Second Circuit has ruled that it is appropriate to allow the case to proceed against the official in his individual capacity. *Id.*

tion to a grand jury. *Id.* at 273, 113 S.Ct. at 2615–16. In addition, the actual presentation of evidence to a grand jury after a decision to seek an indictment has been made falls squarely within the prosecutor's traditional function. *Id.* at 273, 113 S.Ct. at 2615–16; *Maglione v. Briggs,* 748 F.2d 116, 118 (2d Cir.1984); *Lee v. Willins,* 617 F.2d 320 (2d Cir.) *cert. denied,* 449 U.S. 861, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980). Similarly, a prosecutor's determination of which offenses are to be charged is also immune. *See Ying Jing Gan,* 996 F.2d at 530.

■■■ By contrast, absolute immunity is not available when a prosecutor undertakes conduct that is beyond the scope of his or her litigation-related duties. If the challenged conduct either is not a traditional function or is not "intimately associated with the judicial phase of the criminal system," the prosecutor is not entitled to absolute immunity. *Imbler,* 424 U.S. at 430, 96 S.Ct. at 994–95. Thus, when a prosecutor acts in an investigative or administrative capacity rather than in a prosecutorial one, absolute immunity is not available. *Hill v. City of* New York, 45 F.3d 653, 661 (2d Cir.1995). For example, immunity is not available when a prosecutor releases information or evidence to the media, *Buckley,* 509 U.S. at 276–78, 113 S.Ct. at 2617–18; *Powers v. Coe,* 728 F.2d 97, 103 (2d Cir.1984), authorizes or directs the use of wiretaps, *Powers,* 728 F.2d at 103, or performs the functions normally performed by the police such as assisting in the execution of a search or seizure. *See Buckley,* 509 U.S. at 273, 113 S.Ct. at 2615–16. An official also has no immunity if he or she has acted in the "clear absence of all jurisdiction." *Phillips,* 81 F.3d at 1209.

It is well settled that courts are to apply a "functional approach" to determine whether a prosecutor enjoys absolute immunity. *Burns v. Reed,* 500 U.S. 478, 486, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991). However, the line between a prosecutor's acts in preparing for a prosecution, which are immune, and his or her acts of investigation or administration, which are not immune, is somewhat blurred. *See Imbler,* 424 U.S. at 431 n. 33, 96 S.Ct. at 995 n. 33; *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987) (observing that "[i]t is not at all clear what actions are so closely related to a prosecution as to come within the ambit of absolute immunity"), *cert. denied sub nom., Barbera v. Schlessinger,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989). Although declining to establish a bright-line test, the Second Circuit has observed that "in each of the cases we have reviewed where absolute immunity was upheld, some type of formal proceeding had been commenced or was being commenced by the challenged acts. Conversely, where no proceedings have begun, qualified immunity is the norm." *Barbera,* 836 F.2d at 100. Subsequently, in *Hill v. City of New York,* 45 F.3d 653, 661 (2d Cir.1995), the Second Circuit stated that before any formal legal proceeding has begun and before there is probable cause to arrest, it follows that a prosecutor receives only qualified immunity for his acts.

To resolve the issues raised in the D.A. Defendants' motion, we must determine whether the District Attorney performed the conduct alleged in the pleadings as part of his traditional prosecutorial functions, and whether that conduct is closely associated with the judicial process. *Phillips,* 81 F.3d at 1209. Before we can examine the issue of absolute immunity, we must endeavor to identify the specific conduct upon which plaintiff predicates his claims. However, plaintiff's Amended Complaint is vague, and his submission to this court equally ambiguous, in setting forth the factual basis for his claims.

■■■ Although this circuit has not adopted a heightened pleading standard for civil rights claims, plaintiff's Amended Complaint must satisfy the pleading requirements of Rule 8(a), which calls for a short and plain statement of the claim showing that the pleader is entitled to relief.[6] Plaintiff's alle-

---

6. The D.A. Defendants' reliance on *Elliott v. Perez,* 751 F.2d 1472 (5th Cir.1985), for the proposition that section 1983 plaintiffs are to be held to a heightened pleading standard in civil rights actions against government officials is misplaced.

In *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), a case in which the plaintiff alleged municipal liability under section 1983, the Supreme Court rejected the

gations are inadequate if they contain only broad, conclusory statements. The Second Circuit has held that "complaints relying on civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987).

In his Amended Complaint, plaintiff alleges that Defendant Gribetz and the District Attorney's Office violated his Fifth, Sixth, and Fourteenth Amendment rights by "improperly administrating, investigating, and prosecuting" him. Amended Complaint at ¶ 40.[7] In support of these allegations, plaintiff's Amended Complaint asserts that the District Attorney Defendants (1) failed to exercise proper discretion in evaluating whether plaintiff's alleged conduct warranted criminal prosecution, Amended Complaint at ¶ 29; (2) wrongfully interfered with the grand jury proceedings by preventing the grand jurors from obtaining evidence that would exculpate plaintiff and presenting evidence of plaintiff's noncriminal activities, *id.*

at ¶¶ 32, 33; (3) failed to indict other O&R executives for conduct similar to plaintiff's, *id.* at ¶ 34; (4) prosecuted plaintiff for actions that did not rise to the level of criminal conduct, id. at ¶ 38; and (5) acted in league with the O&R Defendants to maliciously prosecute plaintiff, id. at ¶ 38, 44.[8]

 Plaintiff's first and third assertions implicate the District Attorney's traditional function of determining whether to initiate a prosecution, and if so on what charges. These are decisions as to which the District Attorney is entitled to absolute immunity. *Ying Jing Gan*, 996 F.2d at 530–31 (stating that a prosecutor is immune as to his decisions to institute a prosecution); *Phillips*, 81 F.3d at 1209–10 (acknowledging that a prosecutor will be absolutely immune for deciding not to institute criminal proceedings) Plaintiff's fourth contention—that the District Attorney prosecuted him for noncriminal activities—also alleges conduct for which the District Attorney is immune, since this claim relates to the District Attorney's prosecutorial actions, and there is no ground

---

Fifth Circuit's "heightened pleading standard" for civil rights actions. The Court declared: "We think that it is impossible to square the 'heightened pleading standard' applied by the Fifth Circuit in this case with the liberal system of 'notice pleading' set up by the Federal Rules." *Id.* at 168, 113 S.Ct. at 1163. Although *Leatherman* did not expressly abrogate a heightened pleading standard with respect to individual defendants, the logic of *Leatherman* applies with equal force to claims arising in the non-*Monell* context.

7. In his Brief in Opposition to the D.A. Defendants' Motion to Dismiss, plaintiff relies on factual assertions in affidavits and exhibits outside the pleadings to support his contention that the D.A. Defendants' allegedly improper conduct was investigative, rather than quasi-judicial. *See* Plaintiff's Brief in Opposition at 54–56. In addition, plaintiff alleges for the first time that D.A. Defendants participated in or directed an investigation in which evidence was "fabricated and witnesses, fearful of losing their jobs, were intimidated and coerced." *Id.* at 60.

In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir.1991). Thus, the court will consider neither plaintiff's allegations

of evidence fabrication and intimidation of witnesses, which do not appear in the Amended Complaint, nor the affidavits and exhibits cited by plaintiff. In any event, plaintiff's effort to establish that the District Attorney engaged in an investigation of plaintiff is misplaced. The crucial question is not simply whether an investigation occurred but whether the District Attorney's allegedly improper conduct took place as part of the investigative phase or in the performance of the District Attorney's prosecutorial function.

8. Throughout his submission to the court, plaintiff alludes to the D.A. Defendants' improper "conduct." However, to rebut the D.A. Defendants' assertion that the pleadings lack the requisite factual specificity, plaintiff offers only the following allegations in his Amended Complaint:

Defendant Gribetz and the District Attorney's Office knew of ... exculpatory information or information reflecting reasonable doubt as to the existence of criminal activity on Smith's part....
The district Attorney's Office, through its agents, wrongfully interfered with the Grand Jury proceedings by intentionally and/or negligently preventing Grand Jurors from obtaining exculpatory information....
[D]efendant Gribetz and the District Attorney's Office ... acted upon improper personal and political motivations....
Plaintiff's Brief in Opposition at 48–49 (quoting Amended Complaint).

to conclude that the District Attorney acted in the absence of all jurisdiction. *See Schloss v. Bouse,* 876 F.2d 287, 291 (2d Cir.1989). New York Criminal Procedure Law clearly provides the jurisdictional authority for the District Attorney to seek plaintiff's indictment, Crim.Proc. § 190, and New York Penal law, as cited in the indictment, furnishes the substantive basis for the charges against him. *See Barr v. Abrams,* 810 F.2d 358, 361 (2d Cir.1987). As to plaintiff's claim of malicious prosecution, it is beyond dispute that a prosecutor "is absolutely immune from suit for malicious prosecution." *Pinaud,* 52 F.3d at 1149; *Hill,* 45 F.3d at 661.[9]

■ Whether the District Attorney is entitled to absolute immunity for his alleged interference with the grand jury, including his purported failure to present exculpatory evidence, is a more complex issue. The Second Circuit has consistently stated, albeit in cases in which the grand jury considered a prosecutor's request to indict a specific individual rather than conducted a broad investigation, that prosecutors are immune from section 1983 liability for their conduct before a grand jury. *Hill,* 45 F.3d at 661–62; *Powers,* 728 F.2d at 104 ("We believe that a prosecutor must be permitted to work with a grand jury totally free of the threat of civil suit."); *Fine v. City of* New York, 529 F.2d 70, 74 (2d Cir.1975) ("It is clear that the presentation of evidence to grand juries is precisely the sort of prosecutorial function, often requiring 'principled and fearless decision making', that the immunity rule is designed to promote."); *see Brenner v. County Rockland,* 92 Misc.2d 833, 401 N.Y.S.2d 434 (N.Y.Sup.Ct.1978). Absolute immunity for a prosecutor's grand-jury conduct is consistent with both common-law tradition, *see Yaselli v. Goff,* 12 F.2d 396 (2d Cir.1926), *aff'd per curiam,* 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927), and *Imbler's* holding that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune." *Imbler,* 424 U.S. at 431, 96 S.Ct. at 995. However, in *Buckley,* the Supreme Court cabined the scope of absolute immunity with regard to a prosecutor's role in preparing evidence for presentation to a grand jury. The Court stated that immunity is appropriate "after a decision to seek an indictment has been made." *Buckley,* 509 U.S. at 273, 113 S.Ct. at 2615. According to the Court, when a prosecutor's mission is entirely investigative in character, "a prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Id.*

Plaintiff, relying on *Buckley* and *Hill,* contends that absolute immunity does not shield the District Attorney's conduct because the special grand jury proceedings were investigatory in nature and because the District Attorney did not initially have probable cause to seek plaintiff's indictment. Thus, plaintiff reasons that the District Attorney may not have been acting in an advocatory capacity when he engaged in the allegedly improper conduct. Plaintiff, citing *Hill,* argues that because it cannot be determined from the Amended Complaint whether the conduct at issue was performed by the District Attorney in an advocatory or an investigatory role, the applicability of absolute immunity should not be decided on a motion to dismiss.

The present case is distinguishable from *Buckley* and *Hill,* in which the Supreme Court and the Second Circuit respectively determined that the defendant prosecutors in those cases were not necessarily entitled to immunity from allegations that they doctored evidence for subsequent presentation to the grand jury. Here, the specific acts of evidence manipulation that plaintiff alleges in his Amended Complaint relate to the District

---

9. Plaintiff relies on *Weg v. Macchiarola,* 729 F.Supp. 328 (S.D.N.Y.1990) in support of the proposition that "the viability of a Section 1983 malicious prosecution claim extends through the entire criminal proceeding. Thus, Smith's claims are viable as the DA Defendants intentionally continued its prosecution in the absence of probable cause." Plaintiff's Brief at 63. However, the court in *Weg* found the district attorney defendant to be absolutely immune from liability.

*Id.* at 332. Thus, *Weg* can hardly be said to strengthen plaintiff's position.

Plaintiff's also contends that absolute immunity should not shield the District Attorney because a jury could conclude that the District Attorney sought plaintiff's indictment "so as to enhance the credibility of the Company's lawsuit." Plaintiff's Brief at 47. However, a prosecutor's motives have no bearing on the applicability of absolute immunity. *Phillips,* 81 F.3d at 1210.

Attorney's presentation of evidence during the course of the grand jury proceedings. Plaintiff contends that the District Attorney acted improperly by "preventing Grand Jurors from obtaining exculpatory information about Smith or information which would demonstrate the absence of criminality on Smith's part," Amended Complaint at ¶ 32, and by providing the grand jury with prejudicial evidence of plaintiff's "appropriate business conduct," *id.* at 33. Plaintiff's Amended Complaint contains no factual allegations of evidence fabrication or investigative misconduct during the period before the grand jury was convened.[10]

Nonetheless, Plaintiff's argument that absolute immunity should not be available because the grand jury proceedings in this matter were initially investigative, and the District Attorney did not begin to act as an advocate until the as yet undetermined point when he elected to seek plaintiff's indictment is not without force. Courts have recognized that a prosecutor's activities during the grand jury process may involve an investigatory component. *Powers v. Coe,* 728 F.2d 97, 104 (2d Cir.1984); *Gray v. Bell,* 712 F.2d 490, 503 (D.C.Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). In *McGinley v. Hynes,* 51 N.Y.2d 116, 432 N.Y.S.2d 689, 694, 412 N.E.2d 376 (1980) (addressing the availability of a writ of prohibition), the New York Court of Appeals observed that where a grand jury investigation had not progressed to the stage at which individual wrongdoers had been identified or discrete charges of criminality raised, the prosecutor was acting in an investigative capacity. With regard to the point at which an investigative grand jury proceeding becomes accusatorial and absolute immunity is warranted, the Court of Appeals for the District of Columbia stated in *Gray:*

> A pre-indictment investigation ... will necessarily have focused on a particular suspect or crime when the prosecutor actually begins presenting evidence of probable cause to a Grand Jury. Any related prosecutorial action before a Grand Jury, moreover, takes place in a formal procedural setting in which the prosecutor's role approximates his role at trial.

*Gray,* 712 F.2d at 503.

Here, Judge Ingrassia empaneled the special grand jury to undertake a general investigation into wrongdoing at Orange & Rockland Utilities. Thus, the District Attorney's actions cannot be considered advocatory from the outset. The question is whether, at the time that the District Attorney allegedly engaged in misconduct, he had identified plaintiff as a wrongdoer and begun to present the grand jury with evidence of plaintiff's criminal activity in an effort to obtain an indictment. Assuming the truth of plaintiff's factual allegations and mindful that the commencement of formal proceedings does not automatically immunize a prosecutor's subsequent actions, it is nevertheless clear from plaintiff's Amended Complaint that the District Attorney must have already targeted plaintiff and assumed the quasi-judicial role of advocate when he selectively offered evidence of plaintiff's conduct, manipulated the grand jury, and ultimately obtained an indictment against plaintiff.[11] At that point in the grand jury proceeding, the District Attorney clearly was not performing "the investigative functions normally performed by a detective or police officer." *Buckley,* 509 U.S. at 273, 113 S.Ct. at 2616. We can envision no scenario, other than one in which

---

**10.** The Amended Complaint alludes to flaws in the District Attorney's investigation only in the vaguest terms. *See, e.g.,* Amended Complaint a ¶ 29. However, plaintiff cannot avoid the defense of immunity simply by offering conclusory allegations that attribute his indictment to unidentified investigative or administrative actions by the District Attorney.

**11.** Contrary to plaintiff's assertions, his position is not significantly strengthened by *Briggs v. Goodwin,* 569 F.2d 10 (D.C.Cir.1977), *cert. denied,* 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978), the relevant portion of which, in any event, "has met with generally unfavorable

comment." *Gray,* 712 F.2d at 503 n. 38. In *Briggs,* the challenged conduct did not involve a prosecutor's presentation of evidence to a grand jury. Rather, the plaintiff alleged that the prosecutor perjured himself in testimony about an aspect of the on-going investigation. The court held the prosecutor's conduct to be nonadvocatory. However, in contrast to the present case, the *Briggs* prosecutor's "act of answering a single inquiry from the court, an inquiry which plainly called for a simple affirmative or negative response, might well have been classified as a ministerial, rather than a discretionary, act...." *Briggs,* 569 F.2d at 16 n. 7.

the District Attorney was seeking to initiate a prosecution that could explain the District Attorney's presentation of unduly prejudicial evidence and his concomitant failure to disclose exculpatory evidence to the grand jury. Therefore, we conclude that if the District Attorney did engage in the allegedly improper conduct, he did so as part of his quasi-judicial, prosecutorial function and is entitled to absolute immunity.

### B. The Office of the District Attorney

 The defense of absolute immunity is a personal privilege available to government officials only with respect to damage claims asserted against them in their individual capacities. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir.1993). A governmental entity, as opposed to an individual official, possesses no personal privilege of absolute immunity. *Id.* Thus, the Office of the District Attorney, named by plaintiff as a defendant in this action, may not avail itself of the absolute immunity defense. Nonetheless, the Amended Complaint must be dismissed as against the District Attorney's Office. To the extant plaintiff seeks damages from the Office of the District Attorney for specific actions related to plaintiff's prosecution, the Eleventh Amendment protects the District Attorney's Office from liability. *Ying Jing Gan*, 996 F.2d at 529; *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988), *cert. denied*, 488 U.S. 1014, 109 S.Ct. 805, 102 L.Ed.2d 796 (1989); *see Zimmerman v. City of New York*, 52 Misc.2d 797, 276 N.Y.S.2d 711, 714–15 (Sup.Ct.1966) (stating that the district attorney acts for the State in criminal matters, "including criminal investigations and prosecutions within his county"). Moreover, plaintiff has neither alleged that

he suffered injury as the result of any administrative policy or custom. *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978).[12] Thus, plaintiff has failed to state a claim against the Office of the District Attorney in its capacity as a representative of the county.

### CONCLUSION

Based on the foregoing, plaintiff's claims against the D.A. Defendants are dismissed. This dismissal is without prejudice to plaintiff's filing, within thirty days, a second amended complaint alleging facts which, if proven, would establish that his constitutional rights were violated by actions of the District Attorney prior to or outside the performance of his prosecutorial function.

SO ORDERED.

---

12. The D.A. Defendants urge that the Office of the District Attorney is not an entity suable at law. In support of this proposition, they rely on *Tom Sawyer Motor Inns, Inc. v. Chemung County Sewer Dist. N. 1*, 33 A.D.2d 720, 305 N.Y.S.2d 408 (3d Dept.1969). In *Tom Sawyer Motor Inns*, the Third Department held that a sewer district is an administrative unit of county government and not a separate legal entity. Thus, the court found that the sewer district, which performed solely an administrative function, was not suable. We are not persuaded by the D.A. Defendants' unsupported assertions that the status of the Office of the District Attorney is analogous to that of an administrative sewer district, nor have the

D.A. Defendants presented us with cases extending the holding in *Tom Sawyer* to the Office of the District Attorney. We note, for example, that in *Feerick v. Sudolnik*, 816 F.Supp. 879 (S.D.N.Y. 1993), the plaintiff named the District Attorney's Office of New York County ("DAO") as a defendant. The court, rather than finding that the DAO could not be sued, concluded that "the 11th Amendment protects the DAO from section 1983 liability while it acts as a state representative." *Id.* at 887; *see Falcis v. New York City Police Dept., New York City Dept. of Corrections, Queens District Attorney's Office*, 1997 WL 65798 (95 CV 2407) (E.D.N.Y. Feb. 10, 1997).